Appeal from Third District.

## WEYANT, et al. v. UTAH SAVINGS & TRUST CO.

No. 3291.   Decided March 27, 1919.   On Application for rehearing,
May 28, 1919.   (182 Pac. 189.)

1.  EXECUTORS AND ADMINISTRATORS—"EXTRINSIC FRAUD"—RELIEF
    IN EQUITY.  Where husband eloped with another woman and
    lived under a fictitious name until his death, when she secured
    appointment as administratrix and probated his estate in said
    name under representation that she was his wife, and thereby
    secured his property unknown to his wife, and children, held,
    that a court of equity had jurisdiction to grant relief, by open-
    ing the probate proceedings for the purpose of charging admin-
    istratrix on her bond, in view of Const. article 1, section 11,
    and article 8, sections 7 and 9; the fraud practiced by admin-
    istratrix being "extrinsic fraud." [1]   (Page 201.)

2.  EXECUTORS AND ADMINISTRATORS—COLLATERAL ATTACK ON DIS-
    TRIBUTION.  Where husband abandoned his wife and children,
    and eloped to parts unknown with another woman, and lived
    under a fictitious name, and said woman after his death secured
    appointment as administratrix of his estate, and probated the
    estate in said name under representation that she was his law-
    ful wife, and by means thereof secured deceased's property
    unknown to deceased's wife and children, suit in equity by
    lawful wife and heirs for relief on bond of administratrix was
    a direct, as contradistinguished from a collateral attack upon
    probate proceedings. [2]   (Page 201.)

3.  EXECUTORS AND ADMINISTRATORS—FRAUD OF ADMINISTRATRIX—
    RELIEF AGAINST SURETY.  Where husband eloped with another
    woman and lived under a fictitious name until his death, when
    she secured appointment as administratrix and probated his
    estate in said name under representation that she was his
    wife, and thereby secured his property unknown to his wife

---

[1] *Snyder* v. *Murdock*, 26 Utah, 233, 237, 73 Pac. 22; *Benson* v.
*Anderson*, 10 Utah, 135, 37 Pac. 256; *Garr* v. *Davidson*, 25 Utah,
335, 71 Pac. 481; *Barrette* v. *Whitney*, 36 Utah, 574, 106 Pac. 522,
37 L. R. A. (N. S.) 368; *In re Bunting's Estate*, 30 Utah, 251, 84
Pac. 109.

[2] *Snyder* v. *Murdock*, 26 Utah, 233, 237, 73 Pac. 22; *Benson* v.
*Anderson*, 10 Utah, 135, 37 Pac. 256; *Garr* v. *Davidson*, 25 Utah,
335, 71 Pac. 481; *Barrette* v. *Whitney*, 36 Utah, 574, 106 Pac. 522,
37 L. R. A. (N. S.) 368; *Bunting's Estate*, 30 Utah, 251, 84 Pac.
109; *Henderson* v. *Adams*, 15 Utah, 30, 48 Pac. 398; *Mosby* v. *Gis-
born*, 17 Utah, 257, 54 Pac. 121; *Reed* v. *Hume*, 25 Utah, 248, 70 Pac.
998.

and children, and thereafter lawful wife and heirs procured judgment against administratrix, *held*, a court of equity could grant relief against surety on administratrix's bond. (Page 203.)

4. ACTION—FORMS OF ACTION—LEGAL OR EQUITABLE. In Utah, every person who has suffered injury may go into the district court, the court of ordinary jurisdiction, and state the facts concerning his grievance, and, if his statement, when applied to the law, entitles him to relief, the court is bound to grant it, whether legal or equitable, or both. (Page 205.)

5. EXECUTORS AND ADMINISTRATORS—SUIT AGAINST SURETY ON BOND —EVIDENCE—SUFFICIENCY. In suit in equity by lawful wife and heirs of deceased against surety on bond of administratrix, a woman with whom deceased had eloped and lived under a fictitious name, and who had probated his estate under representation that she was his wife and only heir, facts *held* ample to entitle plaintiff's to the relief prayed. (Page 206.)

6. EXECUTORS AND ADMINISTRATORS—BREACH OF CONDITION OF BOND —EVIDENCE. In a suit in equity by lawful wife and heirs of deceased against surety on bond of administratrix, a woman with whom deceased had eloped and lived under a fictitious name, and who had probated his estate under representation that she was his wife and only heir, *held*, that acts of administratrix constituted breaches of bond to "faithfully execute the duties of the trust according to law" and administer estate "for the use of the heirs." [3] (Page 207.)

7. EXECUTORS AND ADMINISTRATORS—JUDGMENT AGAINST EXECUTRIX —BINDING EFFECT AS TO SURETY. The sureties stand in privity with the administratrix, and are bound by a judgment against her in which it is adjudicated that she has breached the conditions of her bond.[4] (Page 209.)

8. EXECUTORS AND ADMINISTRATORS—SUIT AGAINST SURETY—CONDITION PRECEDENT—SETTING ASIDE PROBATE PROCEEDINGS. In a suit by lawful wife and heirs of deceased against administratrix, decree that administration proceedings were fraudulent and that so far as plaintiffs were concerned all orders, decrees, and proceedings were of no force and effect, *held* to have the effect of setting aside orders, final decree of distribution, and discharge, so that suit could be successfully maintained against '

3 *Clinton* v. *Nelson*, 2 Utah, 284.

4 *Reed* v. *Hume*, 25 Utah, 248, 70 Pac. 998; *Snyder* v. *Murdock*, 26 Utah, 233, 73 Pac. 22; *Benson* v. *Anderson*, 10 Utah, 135, 37 Pac. 256; *Garr* v. *Davidson*, 25 Utah, 335, 71 Pac. 481; *Barrette* v. *Whitney*, 36 Utah, 574, 106 Pac. 522, 37 L. R. A. (N. S.) 368; *Clinton* v. *Nelson*, 2 Utah, 284.

Appeal from Third District.

surety on administratrix's bond. (Page 210.)

9. EXECUTORS AND ADMINISTRATORS—LIABILITY OF SURETY. That the court, in an action against administratrix, charged her as trustee, *held*, not to affect rights of lawful wife and heirs of deceased to obtain judgment on the administratrix's bond for any amount which she as administratrix had converted to her own use, and which was not accounted for in the action against her. (Page 212.)

10. EXECUTORS AND ADMINISTRATORS—LACHES—LIABILITY OF BONDS. Where husband eloped with another woman and lived under a fictitious name until his death, when she secured appointment as administratrix and probated his estate in said name under representation that she was his wife, and thereby secured his property, *held*, that wife and heirs, who sued on the administration bond, were not guilty of laches where they moved as soon as they discovered the fraud. (Page 212.)

11. PRINCIPAL AND SURETY—OBLIGATION OF SURETY—ENFORCEMENT. While sureties ordinarily are deemed the favorites of the law, and while their liability will not be extended beyond the express terms of their obligations, yet, when the obligations assumed by the sureties are clearly established, courts will enforce them, the same as other obligations. (Page 212.)

12. SUBROGATION—SURETY OF ADMINISTRATRIX. Surety on administratrix's bond, if it satisfies judgment recovered against it because of administratrix's fraud, will be subrogated to all the rights of plaintiffs with respect to property of the estate, and may charge the administratrix as a trustee for its benefit. (Page 213.)

Appeal from District Court, Third District, Salt Lake County; *Wm. H. Bramel*, Judge.

Action by Charlotte Weyant and others against the Utah Savings & Trust Company. From the judgment rendered, defendant appeals.

AFFIRMED.

*James Ingebretsen* and *Ashby Snow*, both of Salt Lake City, for appellant.

The probate proceedings and the decree rendered therein are in rem, and are conclusive against the whole world, and

cannot be impeached or opened by another court, or in or by any other action, but only by appropriate application in the same proceeding, or upon appeal. *Sohler* v. *Sohler,* 135 Cal. 323, 67 Pac. 282, 87 Am. St. Rep. 98; *Strauss* v. *State,* 36 N. D. 594, 162 N. W. 908, L. R. A. 1917E, 909; 23 Cyc. 1411; 23 Cyc. 1408; Black on Judgments, sections 245, 246; Schouler on Wills (5th Ed.) section 1528; 18 Cyc. 642; 18 Cyc. 628; *Snyder* v. *Murdock,* 26 Utah, 233, at 237, 73 Pac. 22; Comp. Laws 1907, Utah, sections 3779, 3780, 3955; *Toland* v. *Earl,* 129 Cal. 148, 61 Pac. 914, 79 Am. St. Rep. 100; Code Civ. Proc. Cal. section 1686; *Williams* v. *Williams,* 73 Cal. 99, 14 Pac. 394; *Rosenberg* v. *Frank,* 58 Cal. 387; *State* v. *McGlynn,* 20 Cal. 233, 81 Am. Dec. 118; *Tracy* v. *Muir,* 151 Cal. 363, 90 Pac. 832, 121 Am. St. Rep. 117; *State* v. *Blake,* 69 Conn. 64, 36 Atl. 1019; *Grignon* v. *Astor,* 2 How. 319, 11 L. Ed. 283; *Wilson* v. *Hartford Fire Ins. Co.,* 164 Fed. 817, 819, 90 C. C. A. 593, 19 L. R. A. (N. S.) 553; *Kearney* v. *Kearney,* 72 Cal. 591, 15 Pac. 769; *Mohr* v. *Manniere,* 101 U. S. 417, 25 L. Ed. 1052; *Simmons* v. *Saul,* 138 U. S. 453, 11 Sup. Ct. 369, 34 L. Ed. 1054; *Benson* v. *Anderson,* 10 Utah, 135, 37 Pac. 256; Pomeroy, Eq. Jur. section 919; *William Hill Co.* v. *Lawler,* 116 Cal. 359, 48 Pac. 323; *Goad* v. *Montgomery,* 119 Cal. 552, 51 Pac. 681, 63 Am. St. Rep. 145; *Garr* v. *Davidson,* 25 Utah, 335, 71 Pac. 481; *Smith* v. *Westerfield,* 88 Cal. 374, 26 Pac. 206; *Barrette* v. *Whitney,* 36 Utah, 574, 106 Pac. 522, 37 L. R. A. (N. S.) 368.

The probate decrees operated as a complete and final discharge of, and bar in favor of, the surety. Freeman on Judgments (3d Ed.) p. 660; *Evans* v. *Evans* (Ala. 1917) 76 South. 95; *Turner et al.* v. *Cole,* 24 Ala. 364; *Smith* v. *Eureka Bank,* 24 Kan. 528; *Woodworth* v. *Woodworth,* 70 Mo. 601; *State, to Use,* v. *Anthony,* 30 Mo. App. 638.

The appropriate and exclusive remedy applied in a court of equity against probate decrees, where grounds for relief exist, is to charge the property with a trust, and to hold the beneficiary as a trustee for the original owner. *Silva* v. *Santos,* 138 Cal. 536, 71 Pac. 703; *Sohler* v. *Sohler,* 135 Cal. 323, 67 Pac. 282, 87 Am. St. Rep. 98; *Curtis* v. *Schell,* 129 Cal. 208, 61 Pac. 951, 79 Am. St. Rep. 107; *Barnesley* v. *Powell,* 1

Vesey, Sr. 284; *Kerrish* v. *Barnsly,* 7 Brown, Par. Cas. 437; *Andrews* v. *Powys,* 2 Brown, Par. Cas. 504; *Mason* v. *Harkins,* 4 Brown, Par. Cas. 7; *Stead* v. *Curtis,* 205 Fed. 439, 123 C. C. A. 507; *State* v. *McGlynn,* 20 Cal. 233, 81 Am. Dec. 118; *Nicholson* v. *Leatham,* 28 Cal. App. 597, 153 Pac. 965, 155 Pac. 98; *Scoville* v. *Brock,* 79 Vt. 449, 65 Atl. 577, 118 Am. St. Rep. 975; *Hanley* v. *Hanley,* 114 Cal. 690, 46 Pac. 736; *Goodrich* v. *Ferris* (C. C.) 145 Fed. 844; *Aldrich* v. *Barton,* 138 Cal. 220, 71 Pac. 169, 94 Am. St. Rep. 43; *Estate of Hudson,* 63 Cal. 454; *Exton* v. *Zule,* 14 N. J. Eq. 501; *Crew* v. *Pratt,* 119 Cal. 139, 51 Pac. 38; *William Hill Co.* v. *Lawler,* 116 Cal. 359, 48 Pac. 323; *Cunha* v. *Hughes,* 122 Cal. 111, 54 Pac. 535, 68 Am. St. Rep. 27; *Jewel* v. *Pierce,* 120 Cal. 79, 52 Pac. 132; *Turner* v. *Cole,* 24 Ala. 364; *Patterson* v. *Dickinson,* 193 Fed. 328, 113 C. C. A. 252; *Estate of Walker,* 160 Cal. 547, 117 Pac. 510, 36 L. R. A. (N. S.) 89.

The administrator's bond furnished by defendant was not broken. *Clinton* v. *Nelson,* 2 Utah, 284; *Evans* v. *Evans* (Ala. 1917) 76 South. 95; *State* v. *Anthony,* 30 Mo. App. 638; *Barker* v. *Stanford,* 53 Cal. 451; *Kirby* v. *State,* 51 Md. 383; *State et al.* v. *Cheston & Carey,* 51 Md. 352; *Neely* v. *Merritt,* 72 Ky. (9 Bush) 346; *Perkins* v. *Lewis,* 41 Ala. 649, 94 Am. Dec. 616; *Carter* v. *Young,* 9 Lea (Tenn.) 210; *Herbert* v. *Herbert,* 22 La. Ann. 308; *People* v. *Petrie,* 191 Ill. 497, 61 N. E. 499, 85 Am. St. Rep. 268; *Bird* v. *Mitchell,* 101 Ga. 46, 28 S. E. 674; *People* v. *Huffman,* 182 Ill. 391, 55 N. E. 981; *Cluff* v *Day,* 55 N. Y. Super. Ct. 460; *Hinds et al.* v. *Hinds' Ex'r,* 85 Ind. 312; *Sims* v. *Lively,* 53 Ky. (14 B. Mon.) 433; *Warfield* v. *Brand's Adm'r,* 76 Ky. (13 Bush) 77, 95, quoting *Lord Brougham* v. *Lord Wm. Poulett,* 19 Beavan, 133; 11 R. C. L. 305; 18 Cyc. 1264-1268, note 26; *Riggin* v. *Creath,* 60 Ohio St. 114, 53 N. E. 1100; *Young* v. *People,* 35 Ill. App. 363; *Loop* v. *Northup,* 59 Hun. 75, 13 N. Y. Supp. 144; *Ramsey* v. *Cole et al.,* 84 Ga. 147, 10 S. E. 598; *Turner et al* v. *Cole,* 24 Ala. 364; *Hessey's Ex'r* v. *Hessey,* 1 Ky. Law Rep. 424; *Campbell* v. *Amer. Bonding Co.,* 172 Ala. 458, 55 South. 306; *Leavens* v. *Bishop,* 65 Wis. 440, 27 N. W. 324; *Bamke* v. *Chicago, etc., R. Co.,* 61 Minn. 549, 63 N. W. 1116, 52 Am.

St. Rep. 618; *Fisher* v. *Johnson,* 90 Misc. Rep. 46, 152 N. Y. Supp. 944; *Kager* v. *Brenneman,* 47 App. Div. 63, 62 N. Y. Supp. 339.

A judgment against an administrator is conclusive on his surety, but this must be a judgment (such as the decrees upon which we rely) rendered in the probate court or rather according to the probate procedure, and in the very proceeding in which the administrator and his surety are acting. *Commonwealth* v. *Stub,* 11 Pa. 150, 51 Am. Dec. 515; *Reed* v. *Hume,* 25 Utah, 248, 70 Pac. 998; *Beall* v. *New Mexico,* 16 Wall. 535, 21 L. Ed. 292; *Williams* v. *Kiernan,* 25 Hun (N. Y.) 355; *Greer* v. *McNeal* (1902) 11 Okl. 526, 69 Pac. 893: *Treweek* v. *Howard,* 105 Cal. 434, 39 Pac. 20; *Bellinger* v. *Thompson* (1894) 26 Or. 320, 37 Pac. 714, 40 Pac. 229; *Deobold* v. *Opperman,* 111 N. Y. 531, 19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760; *Nanz* v. *Oakley* (1890) 120 N. E. 84, 24 N. E. 306, 9 L. R. A. 223 to 227, inclusive; *Stovall* v. *Banks,* 10 Wall. 583, 19 L. Ed. 1036; *Williams* v. *Kiernan,* 25 Hun. (N. Y.) 355; *Jochumsen* v. *Bank,* 3 Allen (Mass.) 87; *State* v. *White,* 29 N. C. 116; *Wales* v. *Willard,* 2 Mass. 120; *London* v. *Wilmington,* 88 N. C. 584; Comp. Laws 1907, section 2918; *Irwin* v. *Backus,* 25 Cal. 214, 85 Am. Dec. 125; *Reed* v. *Hume,* 25 Utah, 248, 256, 70 Pac. 998; *Salyer* v. *State,* 5 Ind. 202; *Lamkin* v. *Heyer,* 19 Ala. 228; *McClellan* v. *Downey,* 63 Cal. 520; *Baggott* v. *Boulger,* 9 N. Y. Super. Ct. 160; *Jenkins* v. *State,* 76 Md. 255, 23 Atl. 608, 790; *Cleaves* v. *Dockway,* 67 Me. 118; *Frye* v. *Crockett,* 77 Me. 157; *Ordinary* v. *Connolly,* 75 N. J. Eq. 521, 72 Atl. 363; *U. S. F. & G. Co.* v. *People,* 159 Ill. App. 35; *O'Neil's Appeal,* 55 Conn. 409, 11 Atl. 857; *Fincke* v. *Bundrick,* 72 Kan. 182, 83 Pac. 403, 4 L. R. A. (N. S.) 820; *Leavens* v. *Bishop,* 65 Wis. 440, 27 N. W. 324.

Can probate decrees be opened in equity? *Stead* v. *Curtis,* 205 Fed. 442, 123 C. C. A. 507; *Toland* v. *Earl,* 129 Cal. 148, 61 Pac. 914, 79 Am. St. Rep. 100; *Pasadena* v. *Superior Court,* 157 Cal. 788, 109 Pac. 620, 21 Ann. Cas. 1355; *Bacon* v. *Bacon,* 150 Cal. 477, 89 Pac. 317; *Benson* v. *Anderson,* 10 Utah, 135, 37 Pac. 256; *Clarke* v. *Perry,* 5 Cal. 60, 63 Am.

Dec. 82; *Sanford* v. *Head,* 5 Cal. 298; *Deck* v. *Gerke,* 12 Cal. 436, 73 Am. Dec. 558, 560; *Toland* v. *Earl,* 129 Cal. 148, 61 Pac. 914, 79 Am. St. Rep. 100; *Goodrich* v. *Ferris* (C. C.) 145 Fed. 844, 852; *Hayden* v. *Hayden,* 46 Cal. 332; *Froebrich* v. *Lane,* 45 Or. 13, 76 Pac. 351, 106 Am. St. Rep. 634; *Dunlap* v. *Steere,* 92 Cal. 344, 28 Pac. 563, 16 L. R. A. 361; *Estate of Hudson,* 63 Cal. 454; *Lataillade* v. *Orena,* 91 Cal. 565, 27 Pac. 924, 25 Am. St. Rep. 219; *United States* v. *Throckmorton,* 98 U. S. 65, 25 L. Ed. 93; *Bergin* v. *Haight,* 99 Cal. 52, 33 Pac. 760; *Ewing* v. *Lamphere,* 147 Mich. 659, 111 N. W. 187, 118 Am. St. Rep. 563; *Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201, 92 Pac. 184; Pomeroy's Eq. Jur. section 1065; Perry on Trusts, section 620; *Blake* v. *O'Neal,* 63 W. Va. 483, 61 S. E. 410, 16 L. R. A. (N. S.) 1148. and notes; 39 Cyc. 222; *Hill* v. *Hill,* 90 Neb. 43, 132 N. W. 738, 38 L. R. A. (N. S.) 198, and notes; 18 Cyc. 1261, 1262.

Were the probate decrees opened by implication? *Woodworth* v. *Woodworth,* 70 Mo. 601; *Leavens* v. *Bishop,* 65 Wis. 440, 27 N. W. 324; *Smith* v. *Eureka Bank,* 24 Kan. 528; *Tucker* v. *Stewart,* 147 Iowa, 294, 126 N. W. 183; *Evans* v. *Evans,* 76 South. 96; *Pollock* v. *Cox,* 108 Ga. 430, 34 S. E. 213; Brandt on Suretyship, section 712; *Pass* v. *Pass,* 98 Ga. 791, 23 S. E. 752; *Matter of Gall,* 182 N. Y. 270, 74 N. E. 875; Code Ga. section 3511; *Turner* v. *Cole,* 24 Ala. 364; *Canfield* v. *Canfield,* 118 Fed. 1, 55 C. C. A. 169; *State* v. *Anthony,* 30 Mo. App. 638; *Hessey* v. *Hessey,* 1 Ky. Law Rep. 424; *In re Hudson,* 63 Cal. 454; *Sohler* v. *Sohler,* 135 Cal. 323, 67 Pac. 282, 87 Am. St. Rep. 98; *Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201, 92 Pac. 184.

*Chas. H. Hart, H. Van Dam, Jr.,* and *D. N. Straup,* all of Salt Lake City, for respondents.

Probate jurisdiction of district court. *Burke* v. *Bladine,* 99 Wash. 383, 169 Pac. 811; *Benson* v. *Anderson,* 10 Utah, 135, 37 Pac. 256; *Fincke* v. *Bundrick,* 72 Kan. 182, 83 Pac. 403, 4 L. R. A. (N. S.) 820; *Leslie* v. *Manufacturing Co.,* 102 Kan. 159, 169 Pac. 193, L. R. A. 1918C, 55; *Douglass* v. *Fer-*

*ris,* 138 N. Y. 192, 33 N. E. 1041, 34 Am. St. Rep. 435; *Gillett* v. *Wiley,* 126 Ill. 310, 19 N. E. 287, 9 Am. St. Rep. 587; *Evans* v. *Evans,* 76 South 95; *Allison* v. *Crummey* (Okl.) 166 Pac. 691; *Vanhorn* v. *Nestoss,* 99 Wash. 328, 169 Pac. 807; *Gafford* v. *Dickinson,* 37 Kan. 287, 15 Pac. 175; *McAdow* v. *Boten,* 67 Kan. 136, 72 Pac. 529; 18 Cyc. p. 908 and notes; *Sohler* v. *Sohler,* 135 Cal. 323, 67 Pac. 282, 87 Am. St. Rep. 98; *Aldrich* v. *Barton,* 138 Cal. 220, 71 Pac. 169, 94 Am. St. Rep. 43; Comp. Laws Utah 1907, section 3779; *Silva* v. *Santos,* 138 Cal. 536, 71 Pac. 703; *Bunting's Estate,* 30 Utah, 251, 84 Pac. 109.

Is surety a stranger to judgment against administratrix? *Asher* v. *Stull* (Okl.) 161 Pac. 808; *Dennie* v. *Smith,* 129 Mass. 143; *Douglass* v. *Ferris,* 138 N. Y. 192, 33 N. E. 1041, 34 Am. St. Rep. 435; *Gillette* v. *Wiley,* 126 Ill. 310, 19 N. E. 287, 9 Am. St. Rep. 587; *Biggins* v. *Raisch,* 107 Cal. 210, 40 Pac. 333.

Is judgment roll in action against administratrix evidence against surety? *Barker* v. *Wheeler,* 60 Neb. 470, 83 N. W. 678, 83 Am. St. Rep. 541; *Hailey* v. *Boyd,* 64 Ala. 399; *Moses* v. *United States,* 166 U. S. 571, 17 Sup. Ct. 682, 41 L. Ed. 1119; *Beauchaine* v. *McKinnon,* 55 Minn. 318, 56 N. W. 1065, 43 Am. St. Rep. 506; *Stephens* v. *Shafer,* 48 Wis 54, 3 N. W. 835, 33 Am. Rep. 793; *Ballantine* v. *Fenn,* 84 Vt. 117, 78 Atl. 713, 40 L. R. A. (N. S.) 698; *Stalling* v. *Schapero,* 217 Mass. 71, 104 N. E. 440, Ann. Cas. 1915D, 399, 410; *Commonwealth* v. *Fidelity & Deposit Co.,* 224 Pa. 95, 73 Atl. 327, 132 Am. St. Rep. 755, 770; Black on Judgments, sections 587-590; *Mitchell* v. *Toole,* 63 Ga. 93; Jones on Evidence, section 608; 32 Cyc. 135; *Irwin* v. *Backus,* 25 Cal. 214, 85 Am. Dec. 125; *Surety Co.* v. *Arterburn,* 110 Ky. 832, 62 S. W. 862; *Stovall* v. *Banks,* 10 Wall. 583, 19 L. Ed. 1036; *Barker* v. *Wheeler,* 60 Neb. 470, 83 N. W. 678, 83 Am. St. Rep. 541; *State* v. *Banks* (Md.) 24 Atl. 540; *Fire Ass'n* v. *Ruby,* 49 Neb. 584, 68 N. W. 939; *Douglass* v. *Ferris,* 138 N. Y. 192, 33 N. E. 1041, 3 4Am. St. Rep. 435; *Hailey* v. *Boyd,* 64 Ala. 399.

Breaches of bond by administratrix and liability of surety. *Butts* v. *Larison* (Okl.) 170 Pac. 500; *Fincke* v. *Bundrick*

(1905) 72 Kan. 182, 83 Pac. 403, at p. 405, 4 L. R. A. (N. S.)
820; Woerner on Administration (2d Ed.) p. 548, section
255; 1 Brandt on Suretyship (3d Ackley's Ed.) section 2;
*Green's Administratrix* v. *Creighton,* 23 How. 90, 108, 16 L.
Ed. 419; 11 A. & E. Encycl. of L. (2d Ed.) 901, 902; *Hay-
den* v. *Hayden,* 46 Cal. 332; *Aldrich* v. *Barton,* 138 Cal. 222,
223, 71 Pac. 169, 94 Am. St. Rep. 43; *Bacon* v. *Bacon,* 150 Cal.
489, 89 Pac. 317; 18 Cyc. 1260.

The probate decree was final and binding, except on appeal,
new trial, or writ of review. *Strauss* v. *State,* 36 N. D. 594,
162 N. W. 908, L. R. A. 1917E, 909; *Snyder* v. *Murdock,* 26
Utah, 233, 73 Pac. 22; Black on Judgments, sections 245, 246;
*Toland* v. *Earl,* 129 Cal. 148, 64 Pac. 914, 79 Am. St. Rep.
100; 23 Cyc. 1408, 1410, 1411; *State* v. *McGlynn,* 20 Cal. 233,
81 Am. Dec. 118; Comp. Laws Utah 1907, sections 3779, 3780,
3955; Code Civ. Proc. Cal. sections 1666, 1686; *Tracy* v.
*Muir,* 151 Cal. 363, 90 Pac. 832, 121 Am. St. Rep. 117; Schou-
ler on Wills (5th Ed.) section 1528; *State* v. *Blake,* 69 Conn.
64, 36 Atl. 1019; 18 Cyc. 642, 628; *Sohler* v. *Sohler,* 135 Cal.
323, 67 Pac. 282, 87 Am. St. Rep. 98; *Wilson* v. *Hartford Fire
Ins. Co.,* 164 Fed. 817, at 819, 90 C. C. A. 593, 19 L. R. A.
(N. S.) 553; *Kearney* v. *Kearney,* 72 Cal. 591, 15 Pac. 769;
*Mohr* v. *Mannierre,* 101 U. S. 417, 25 L. Ed. 1052; *Simmons* v.
*Saul,* 138 U. S. 453, 11 Sup. Ct. 369, 34 L. Ed. 1054; *Benson*
v. *Anderson,* 10 Utah, 135, 37 Pac. 256; *Goad* v. *Montgomery,*
119 Cal. 552, 51 Pac. 681, 63 Am. St. Rep. 145; Pomeroy, Eq.
Jur. section 919; *Garr* v. *Davidson,* 25 Utah, 335, 71 Pac. 481;
*Smith* v. *Westerfield,* 88 Cal. 374, 26 Pac. 206; *William Hill
Co.* v. *Lawler,* 116 Cal. 359, 48 Pac. 323; *Barrette* v. *Whitney,*
36 Utah, 574, 106 Pac. 522, 37 L. R. A. (N. S.) 368; *Barns-
ley* v. *Powel,* 1 Ves. Sr. 284; *Rosenberg* v. *Frank,* 58 Cal. 387;
*Pasadena* v. *Superior Court,* 157 Cal. 788, 109 Pac. 623, 21
Ann. Cas. 1355; *Bacon* v. *Bacon,* 150 Cal. 477, 89 Pac. 317;
*Grignon's Lessees* v. *Astor,* 2 How. 319, 340, 11 L. Ed. 283;
*United States* v. *Arredondo,* 6 Pet. 729, 8 L. Ed. 547.

Breaches of duties by administratrix. *Clinton* v. *Nelson,* 2
Utah, 284; *Evans* v. *Evans* (Ala. 1917) 76 South. 95; *State*
v. *Anthony,* 30 Mo. App. 638; *Baker* v. *Stanford,* 53 Cal. 451;

*Kirby* v. *State*, 51 Md. 383; *State* v. *Cheston & Carey*, 51 Md. 352; *Neely* v. *Merritt*, 72 Ky. (9 Bush.) 346; *Perkins* v. *Lewis*, 41 Ala. 649, 94 Am. Dec. 616; *Herbert* v. *Herbert*, 22 La. Ann. 308; *People* v. *Petrie*, 191 Ill. 497, 61 N. E. 499, 85 Am. St. Rep. 268; *Bird* v. *Mitchell*, 101 Ga. 46, 28 S. E. 674; *People* v. *Huffman*, 182 Ill. 391; *Cluff* v. *Day*, 55 N. Y. Super. Ct. 460; *Hinds* v. *Hinds' Ex'r*, 85 Ind. 312; *Sims* v. *Lively*, 53 Ky. (14 B. Mon.) 433; *Warfield* v. *Brand's Adm'r*, 76 Ky. (13 Bush) 77; *Riggin* v. *Creath*, 60 Ohio St. 114, 53 N. E. 1100; *Young* v. *People*, 35 Ill. App. 363; *Loop* v. *Northup*, 59 Hun, 75, 13 N. Y. Supp. 144; *Ramsey* v. *Cole*, 84 Ga. 147, 10 S. E. 598; *Turner* v. *Cole*, 24 Ala. 364; *Hessey's Ex'r* v. *Hessey*, 1 Ky. Law Rep. 424; *Campbell* v. *Amer. Bonding Co.*, 172 Ala. 458, 55 South. 306; *Leavens* v. *Bishop*, 65 Wis. 440, 27 N. W. 324; *Bamke* v. *Chicago, etc., R. Co.*, 61 Minn. 549, 63 N. W. 1116, 52 Am. St. Rep. 618; *Fisher* v. *Johnson*, 90 Misc. Rep. 46, 152 N. Y. Supp. 944; *Kager* v. *Brenneman*, 47 App. Div. 63, 62 N. Y. Supp. 339; *Carter* v. *Young*, 9 Lea (Tenn.) 210, 213; *Drane* v. *Bayliss*, v Humph. (Tenn.) 174; *Hughlett* v. *Hughlett*, 5 Humph. (Tenn.) 453.

Assailing probate proceedings and decree by direct proceedings in a court of equity. *Benson* v. *Anderson*, 10 Utah, 135, 37 Pac. 256; *Clarke* v. *Perry*, 5 Cal. 60, 63 Am. Dec. 82; *Sanford* v. *Head*, 5 Cal. 298; *Deck* v. *Gerke*, 12 Cal. 436, 73 Am. Dec. 558, 560; *Hayden* v. *Hayden*, 46 Cal. 332; *Froebrich* v. *Lane*, 45 Or. 13, 76 Pac. 351, 106 Am. St. Rep. 634; *Dunlap* v. *Steere*, 92 Cal. 344, 28 Pac. 563, 16 L. R. A. 361; *In the Matter of Estate of Hudson*, 63 Cal. 454; *Lataillade* v. *Orena*, 91 Cal. 565, 27 Pac. 924, 25 Am. St. Rep. 219; notes to *Green* v. *Creighton*, 48 Am. Dec. 746; note to *Clarke* v. *Perry*, 63 Am. Dec. 83; *United States* v. *Throckmorton*, 98 U. S. 65, 66, 25 L. Ed. 93; *Bergin* v. *Haight*, 99 Cal. 52, 33 Pac. 760; *Ewing* v. *Lamphere*, 147 Mich. 659, 111 N. W. 187, 118 Am. St. Rep. 563, and note; *Campbell-Kawannanakoa* v. *Campbell*, 152 Cal. 201, 92 Pac. 184; Pomeroy's Eq. Jur. (2d Ed.) sections 345-358, and notes; *Delafield* v. *State of Illinois*, 2 Hill (N. Y.) 159; *Pico* v. *Cohn*, 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 13 L. R. A. 336, 25 Am. St. Rep. 159; Pomeroy's Eq.

Jur. section 919; *Wingerter* v. *Wingerter,* 71 Cal. 105, 11 Pac. 853; *Parsons* v. *Weis,* 144 Cal. 410, 77 Pac. 1007; *Moore* v. *Crawford,* 130 U. S. 122, 9 Sup. Ct. 447, 32 L. Ed. 878; Statute of Uses, 27 Hen. VIII, c. 10; *Henderson* v. *Adams,* 15 Utah, 30, 48 Pac. 398; *Schenck* v. *Wicks,* 23 Utah, 576, 65 Pac. 732; Pomeroy's Eq. Jur. section 1065; Perry on Trusts, section 520; *Blake* v. *O'Neal,* 63 W. Va. 483, 61 S. E. 410, 16 L. A. A. (N. S.) 1148, and notes; *Hill* v. *Hill,* 90 Neb. 43, 132 N. W. 738, 38 L. R. A. (N. S.) 198, and notes; *Mosby* v. *Gisborn,* 17 Utah, 257, 54 Pac. 121; *Parsons* v. *Weis,* 144 Cal. 410, 77 Pac. 1007; *Bank of Chadron* v. *Anderson,* 7 Wyo. 441, 53 Pac. 280; 8 Pl. & Practice, 721; *Reed* v. *Hume,* 25 Utah, 248, 70 Pac. 998; Comp. Laws Utah 1907, section 3830; *Pacific Bridge Co.* v. *U. S. Fidelity Co.,* 33 Wash. 47, 73 Pac. 772.

Fraud in procuring administratrix's bond and surety's liability under proceedings against administratrix. *Pierce* v. *Holzer,* 65 Mich. 263, 32 N. W. 431; *Greer* v. *McNeal* (1802) 11 Okl. 526, 69 Pac. 893; *Treweek* v. *Howard,* 105 Cal. 434, 93 Pac. 20; *Bellinger* v. *Thompson* (1894) 26 Or. 320, 37 Pac. 714, 40 Pac. 229; *Deobold* v. *Opperman* (1888) 111 N. Y. 531, 19 N. E. 94, 2 L. R. A. 644; *Manz* v. *Oakley* (1890) 120 N. Y. 84, 24 N. E. 306, 9 L. R. A. 223 to 227; *Irwin* v. *Backus,* 25 Cal. 214, 85 Am. Dec. 125, note 131; *Meyer* v. *Barth,* 97 Wis. 352, 72 N. W. 748, 65 Am. St. Rep. 124; *Stovall* v. *Banks,* 10 Wall. 583, 19 L. Ed. 1036; Comp. Laws Utah 1907, section 2918; *Williams* v. *Kiernan,* 25 Hun (N. Y.) 355; *Salyer* v. *State,* 5 Ind. 202; *McClellan* v. *Downey,* 63 Cal. 520; *Jenkins* v. *State,* 76 Md. 255, 23 Atl. 608, 790; *Baggott* v. *Boulger,* 9 N. Y. Super. Ct. 160; *Ralston* v. *Wood,* 15 Ill. 159, 58 Am. Dec. 604.

Discharge of surety by decree in probate. *State* v. *Burkam,* 23 Ind. App. 271, 55 N. E. 237; Brandt, Suretyship and Guaranty (3d Ed.) section 712; *Pass* v. *Pass,* 98 Ga. 791, 23 S. E. 752; *Jacobs* v. *Pou,* 18 Ga. 346; *Potter* v. *Ogden,* 136 N. Y. 384, 33 N. E. 228; *Ingersoll* v. *Mangam,* 84 N. Y. 622; *Davis* v. *Crandall,* 101 N. Y. 321, 4 N. E. 721; *Crouter* v. *Crouter,* 133 N. Y. 56, 30 N. E. 726; *State* v. *Whitehouse* (Jan. 1903) 75 Conn. 410, 53 Atl. 897; *Matter of Gall,* 182

N. Y. 270, 74 N. E. 875; *Canfield* v. *Canfield,* 118 Fed. 1, 55 C. C. A. 169; *Succession of Reilly* v. *American Bonding Co. of Baltimore,* 138 La. 315, 70 South. 237; *Pierce* v. *Maetzold,* 126 Minn. 445, 148 N. W. 302; Church, Probate Law and Practice, pp. 438, 440; Schouler on Wills (5th Ed.) sections 1143, 1146; *Cleaves* v. *Dockray,* 67 Me. 118; *Shalter's Appeal,* 43 Pa. 83, 82 Am. Dec. 552; *Frye* v. *Crockett,* 77 Me. 157; *Mefford* v. *Lamkin,* 38 Ind. App. 33, 76 N. E. 1024, affirmed in 77 N. E. 960; Woerner on the Law of Decedents' Estates, section 238; *American Surety Co.* v. *Piatt,* 67 Kan. 294, 72 Pac. 775; *Elizalde* v. *Murphy,* 163 Cal. 681, 126 Pac. 978; *Ordinary* v. *Connolly,* 75 N. J. Eq. 521, 72 Atl. 363; *U. S. F. & G. Co.* v. *People,* 159 Ill. App. 35; 18 Cyc. 1275; *Pollock* v. *Cox,* 108 Ga. 430, 34 S. E. 213; *In re Killan's Estate,* 63 L. R. A. 96, notes; *O'Neil's App.,* 55 Conn. 409, 11 Atl. 857.

Provisions as to probate bond. *Slater* v. *McAvoy,* 123 Cal. 437, 56 Pac. 49; Comp. Laws Utah 1907, section 3926 (Code Civ. Proc. Cal. section 1458), 3829 (1390), 3830 (1392). See, also, Code Civ. Proc. Cal. section 1388, and cases cited. Comp. Laws Utah 1907, section 3919 (Code Civ. Proc. Cal. section 1586, citing *Slater* v. *McAvoy,* 123 Cal. 437, 56 Pac. 49), 3927 (1459), 3965 (1697), 3966 (1698), 4048 (McClain's Ann. Code Iowa, 1888, section 3679), 3946 (Code Civ. Proc. Cal. section 1637).

FRICK, J.

The plaintiffs named in the title, hereinafter called respondents, commenced this action in the district court of Salt Lake county as heirs at law of one Harvey Weyant, deceased. The action is predicated upon a statutory administrator's bond executed by one Rosella Fuller, as principal, and the appellant, as surety; said Rosella Fuller having been appointed the administratrix of the estate of said Harvey Weyant, deceased. Respondents obtained judgment on said bond against appellant, from which it prosecutes this appeal.

The pleadings, including the attached exhibits, findings of fact, conclusions of law, and judgments in the several pro-

ceedings hereinafter referred to cover 157 pages of the printed abstract. It is impracticable to set forth the pleadings, etc., in this opinion, even in condensed form. It is not always an easy task to make a satisfactory statement of the contents of the pleadings and findings of the court, where, as here, these things must be greatly abridged, and especially where the matters complained of are alleged to have been based upon fraud, misrepresentation, and deceit. In our judgment, however, the following statement fairly and sufficiently reflects the pleadings, the findings of the court, and the undisputed facts, together with the matters stated in the judgment:

One Harvey Weyant, whose estate constitutes the subject of this controversy, died intestate at Salt Lake City, Utah, on the twenty-sixth day of July, 1910. The respondent Charlotte Weyant, at the time of the death of said Weyant, was his lawful wife, and all the other respondents named in the title, except Carry Miller Clark, were his children and the issue of the marriage between the deceased and said Charlotte Weyant, while said Carry Miller Clark is a grandchild of said Weyant. Harvey Weyant had lived with his said wife and children at Springfield, Mass., for many years, and until May, 1890, at which time he abandoned them and eloped with one Rosella McIntyre, a young girl about seventeen years of age, to parts unknown to his family. Said Weyant and said Rosella McIntyre, under the name of Rosella Fuller, in due time arrived at Salt Lake City, and from thenceforth until the death of said Weyant lived in said city as husband and wife under the name of Fuller; that is, said Weyant from thenceforth assumed and was known by the name of Harvey W. Fuller, and said Rosella McIntyre was known as Mrs. Fuller. He conducted business in that and in no other name during the twenty years that he lived in Salt Lake City. After the departure from his home at Springfield, said Weyant never returned thereto, and his place of residence or abode was unknown to his said wife and children, and although they expended considerable money searching for him, they did not learn of his abode or death until the month of September,

1915.  The inventory of his estate disclosed that Weyant, at the time of his death, was possessed of and owned real and personal property of the appraised value of $29,296.92.  The court also found that said Rosella McIntyre, on the thirtieth day of July, 1910, in order to cheat and defraud the respondents, and to convert to her own use the property belonging to the estate of said Weyant, and to which she knew she had no lawful right or claim, by the name of Rosella Fuller, and as the pretended wife of said Weyant, filed her petition in the probate division of the district court of Salt Lake county in said estate, in which petition she falsely and fraudulently alleged and represented that she was the lawful wife of said Weyant, deceased, and his only surviving heir at law, when, in truth and in fact, she well knew that the respondent Charlotte Weyant was the lawful wife of said decedent, and that the other respondents were his lawful heirs; and that she had no legal right or claim to any of the property of which said Weyant was possessed and owned at the time of his death; that she fraudulently and deceitfully withheld the truth from said court, and fraudulently induced it to believe that she was the wife of said decedent, and by reason thereof to appoint her as the administratrix of said estate; that she thereafter falsely, fraudulently, and deceitfully conducted all of the proceedings relating to the administration of the estate of said Weyant in the name of Harvey W. Fuller, instead of in his true name of Harvey Weyant; that said Rosella Fuller thereafter, in said name, and by virtue of her said deceit, and by said false and fraudulent representations, obtained a family allowance for herself out of said estate amounting to the sum of $1,650, all of which she wrongfully and unlawfully appropriated to her own use; that thereafter, on June 26, 1911, said Rosella Fuller filed her petition in said court for a final settlement and distribution of the estate of said Weyant, in which petition she deceitfully, falsely and fraudulently alleged and represented herself to be the only heir at law of said Weyant, deceased; that said court, by being deceived and misled by the representations aforesaid, on the seventh day of July, 1911, made and entered an order in said estate al-

lowing and settling the final account of said Rosella Fuller as
the administratrix thereof, and entered a decree distributing
to her out of the property of said estate the sum of $12,675.10
in cash, household goods and other property of the appraised
value of $3,410.50, together with certain real estate situate in
Salt Lake City, which is particularly described in said decree
of distribution, all of which property she, said Rosella Fuller,
wrongfully and unlawfully appropriated and converted to
her own use, and of which she has deprived the respondents;
that in probating said estate no notice was ever published or
given, except in the name of Harvey W. Fuller, and that all
the proceedings relating to the administration of the estate of
said Weyant were falsely, deceitfully, and fraudulently con-
ducted in the false and fictitious name of Harvey W. Fuller
by said Rosella Fuller, all of which was done by her for the
purpose of cheating and defrauding the respondents; that the
orders that were made by said court in said probate proceed-
ings, and the approval and settlement of said final account,
and the decree of distribution, were each and all based upon
the false, fraudulent, and deceitful statements of said Ro-
sella Fuller, and that she obtained the property of said es-
tate through and by means of said deceit and fraud and not
otherwise; that neither of said respondents was ever in the
state of Utah during the lifetime of said Weyant, nor at any
time until the month of September, 1915, and that prior to
said time they, nor either of them, had any notice or knowl-
edge of the residence of said decedent, nor of his death, nor
of any of the proceedings herein referred to; that upon learn-
ing the facts before stated the respondents, on or about Sep-
tember 30, 1915, commenced an action in equity in the district
court of Salt Lake county against said Rosella Fuller, who at
that time, by reason of her marriage to one Morgan, was
known by the name of Rosella Morgan, in which last name
said action was commenced and prosecuted; that such pro-
ceedings were had in said action that on August 12, 1916, said
court made findings of fact and conclusions of law and en-
tered judgment in said action in favor of the respondents.

In said action the court in substance found the facts here-

inbefore stated, and in effect further found that said Rosella Fuller, alias Morgan, through deceit and fraud practiced by her upon the court in the probate proceeding, had obtained the orders which were made during the administration of the estate of said Weyant, and that by means of deceit and fraud had also obtained the allowance and settlement of her final account as administratrix of said estate and a decree distributing said property to her, all of which she wrongfully and fraudulently has converted to her own use, and she has failed to account to the respondents for said property or any part thereof. The court also found that judgment was entered in said action against her for the sum of $26,091.47. The court further found that prior to the issuance of letters of administration to said Rosella Fuller in the estate of said decedent she was required by said court to furnish a bond for the sum of $37,000; that on the twentieth day of August, 1910, she, as principal, and the appellant as surety executed, delivered, and filed in said court a bond for said sum in which bond it is, among other things, provided that said Rosella Fuller, as principal, and the appellant, as surety, are jointly and severally "held and firmly bound unto the state of Utah, for the use of the heirs and creditors of Harvey W. Fuller, deceased, in the sum of $37,000." One of the conditions of said bond is that—

"If the said Rosella Fuller shall faithfully execute the duties of the trust according to law as such administratrix, then this obligation to be void; otherwise, to be and remain in full force and virtue."

The court also found that Rosella Fuller, in furtherance of her deceitful and fraudulent purpose and design, had wrongfully and fraudulently converted money and property of said estate to her own use of the value of $26,091.47, and that execution had been duly issued against her and returned unsatisfied, except for the sum of $489.35. In addition to the foregoing, the court, in the equity proceeding aforesaid, upon a supplemental complaint and proper proceedings had thereon, also made supplemental findings of fact and conclusions of law, in which it is in substance found that, in addition to the property aforesaid, said Rosella Fuller, by virtue of her ap-

pointment as administratrix of said estate, also obtained pos-
session of large sums of money and of a large amount of per-
sonal property belonging to said estate, which money and
property was of the value of $12,691.40, and which she had
failed and neglected to inventory as a part of said estate, or
to account therefor in the administration of said estate, all
of which money and property, except the sum of $1,000, she
has converted to her own use and still retains; that she had
wholly failed to inventory or to account to said estate and to
the respondents for the money and property last above men-
tioned, amounting to the sum of $11,691.40, besides interest
and costs.

The conclusions of law are quite long. They, however,
fairly reflect the findings of fact, and hence we need not re-
peat all of them here. In view of appellant's contention, how-
ever, as hereinafter disclosed, it becomes necessary to set
forth here one of the conclusions of law in full. It reads:

"That the value of the moneys and property so converted by
the said Rosella Fuller as administratrix, and while she was such
administratrix, and which she in violation of the orders and judg-
ments of the court in the premises has failed and refused to
account for, in which, as heretofore found and adjudged, was a
breach of her trust and duties as such administratrix of said estate,
and a breach of the bond or undertaking sued on in this action,
is the sum of $38,414.07."

The court also found as a conclusion of law that respond-
ents were entitled to judgment against the appellant for the
sum of $37,000, with legal interest on the sum of $25,732.67
of said amount from a certain date, and with legal interest on
the sum of $11,277.33 (should be $11,267.33) from a certain
other date. Judgment was entered accordingly.

We deem it essential to further state here that in the pro-
bate proceedings, after the final account of Rosella Fuller as
administratrix had been approved and allowed and the de-
cree of distribution had been entered, the court also entered
an order or judgment of discharge in the following words:

"It is ordered, adjudged, and decreed that said Rosella Fuller,
as aforesaid, has fully and faithfully discharged the duties of her
trust; that she is hereby wholly and absolutely discharged from
all further duties and responsibilities as such administratrix, and

that her letters of administration are hereby vacated; that the said estate is declared fully distributed, and the trust settled and closed; and the said Rosella Fuller, administratrix, and her sureties, are hereby released from any liability to be hereafter incurred."

We remark that, while the judgments or decrees against Rosella Fuller, alias Morgan, go into great detail and adjudicate that all of the orders, proceedings, and decrees that were entered in the matter of the administration of the estate of Harvey Weyant were obtained through and by means of the deceitful and fraudulent acts and representations of said Rosella Fuller, alias Morgan, as administratrix of said estate, and that, so far as respondents are concerned, all of said orders, decrees, and proceedings were of no force or effect, and although the respondents prayed that the final settlement of the account of said administratrix and decree of distribution and the probate proceedings be vacated, and also prayed for general relief, yet the court did not in express terms set aside or vacate either of the orders aforesaid, nor did the court in express terms vacate the order or judgment of discharge. It further appears from the proceedings that the respondents instituted an action in Idaho against said Rosella Fuller, alias Morgan, for the purpose of charging certain real estate that she had purchased there with a trust, alleging and establishing that she had used the sum of $1,000 which she obtained from the estate of said Weyant to pay for said real estate, and it was accordingly adjudged that the respondents have a lien upon said land for the amount of said $1,000, which, it seems, they subsequently realized. It was also adjudged in said decree:

"That the defendant Rosella Morgan, alias Rosella Fuller, held the property described in paragraph 1 in trust for plaintiffs herein according to their rights."

While appellant's counsel have assigned a large number of errors, yet in their printed brief and in their oral argument they have condensed them into nine propositions, some of which, however, they themselves concede blend and overlap one another. We shall consider such propositions argued as we deem material, and we shall do so without following

strictly the order in which they are presented in counsel's brief:

The first proposition contended for by appellant's counsel in their brief is stated thus:

"The probate proceedings and the decree rendered therein are in rem, and are conclusive against the whole world, and cannot be impeached or opened by another court in or by any other action, but only by proper application in the same proceedings or upon appeal."

Counsel have cited a large number of decisions and text-writers which they contend, support the foregoing proposition. We shall not attempt to cite, much less review, all of the decisions cited by counsel, but shall cite only a few cases upon each proposition discussed, leaving it to the reporter to make a full citation of the cases and authorities referred to by counsel in their respective briefs.

Among the authorities cited and relied on by appellant's counsel are the following: 23 Cyc. 1407-1411; 18 Cyc. 628-642; 1 Black, Judgments, section 445; *Toland* v. *Earl,* 129 Cal. 148, 61 Pac. 914, 79 Am. St. Rep. 100; *Sohler* v. *Sohler,* 135 Cal. 323, 67 Pac. 282, 87 Am. St. Rep. 98; *Tracy* v. *Muir,* 151 Cal. 363, 90 Pac. 832, 121 Am. St. Rep. 117; *Simmons* v. *Saul,* 138 U. S. 453, 11 Sup. Ct. 369, 34 L. Ed. 1054; *State* v. *Blake,* 69 Conn. 64. Counsel, however, frankly concede that the territorial Supreme Court of Utah, in the case of *Benson* v. *Anderson,* 10 Utah, 135, 37 Pac. 256, held that courts of equity do possess power to grant relief against the orders and judgments entered in probate proceedings upon the same ground that such courts can grant relief against judgments entered in other actions or proceedings. It is also conceded that the foregoing decision is based upon practically the same statute on which the California decisions are based, which, they contend, hold to the contrary. It must be conceded that the Supreme Court of California has, in at least a number of cases, held that courts of equity may not interfere with the judgments entered in probate proceedings to the same extent that such may be done in other civil actions or proceedings. It is accordingly held in California that, although a court of equity may grant relief against judgments and decrees ob-

tained in probate proceedings for extrinsic fraud, yet such relief, ordinarily, at least, cannot be extended beyond charging the administrator, or other person, if there be such, who has obtained the property of the estate by fraud, as trustee and to require him to account to the person who has been so defrauded. Appellant's counsel very urgently insist that such is the great weight of authority and that this court should so hold.

Referring, now, to a somewhat later California decision, and to at least one emanating from another court which is based upon the California statute and procedure relating to the administration of estates, we find that in a quite recent case emanating from the District Court of Appeal of California, namely, *Nicholson* v. *Leatham,* 28 Cal. App. 597, 153 Pac. 965, 155 Pac. 98, it is held that the rule contended for by counsel does not apply with full force in cases "where there has been a breach of duty arising from a fiduciary relation" and extrinsic fraud has been established. In a recent case emanating from the United States Circuit Court for the Northern District of California, namely, *Goodrich* v. *Ferris,* 145 Fed. 844, which decision is based upon the California statute and procedure relating to the administration of estates, it is held that—

"A court of equity is without jurisdiction of a suit to set aside a decree of a superior court of California, entered *after due notice given as required by statute,* distributing the estate of a testator in accordance with his will, which has been duly probated, and to have the will declared invalid, *unless under extraordinary circumstances where fraud or a breach of trust extrinsic to the proceedings is shown.*" (Italics ours.)

It would seem that even under the California rule, as construed by the more recent decisions, conditions may arise in probate proceedings which, if established, will authorize a court of equity to grant relief in an independent action. It should be observed, however, that in the case last above quoted from it is expressly said, "after due notice given as required by statute." Undoubtedly, the giving of the statutory notice is always a prerequisite to the conferring of jurisdiction upon the court. This court is committed to the doctrine contended

for by counsel for appellant, namely, that probate proceedings are in rem, and that where the statutory notice has been given all who are interested in the estate are bound by all orders or decrees duly entered in a particular case, and that, ordinarily, the only remedy is by direct appeal. *Barrette* v. *Whitney*, 36 Utah, 574, 106 Pac. 522, 37 L. R. A. (N. S.) 368. This court has also held that judgments and decrees entered by courts of competent jurisdiction, where jurisdiction of the subject of the action and of the person has been legally acquired, can only be assailed on direct appeal or in equity for extrinsic as contradistinguished from intrinsic fraud. *Cantwell* v. *Thatcher Bros. Banking Co.*, 47 Utah, 150, 151 Pac. 986. This court, therefore, is in harmony with counsel's contention respecting a part of the statement we have quoted above. This court, however, never held that where the statutory notice has not been given, or in case of extrinsic fraud, especially if practiced upon the court as in this case, courts of equity are less potent to grant relief in probate proceedings than they are in other civil actions or proceedings. Nor has it been held by this court that appeal or a direct application is the only available remedy in probate proceedings regardless of how the judgment or decree appealed from was obtained.

It may as well be stated here as anywhere else in this opinion that this court is also firmly committed to the doctrine that attacks like the one made in this case in the equity action, to which reference is made in the statement of facts, is a direct as contradistinguished from a collateral attack. *Liebhart* v. *Lawrence*, 40 Utah, p. 243, 120 Pac. 215, and cases cited. To the same effect are *Bacon* v. *Bacon*, 150 Cal. 477, 89 Pac. 317, *Campbell* v. *Campbell*, 152 Cal. 201, 92 Pac. 184, and *Parsons* v. *Weis*, 144 Cal. 410, 77 Pac. 1007.

The question as to what extent relief may be granted by courts of equity in probate proceedings under circumstances disclosed by this record is now presented for the first time since the creation of our courts by our Constitution. In this connection let it be remembered that the fraud alleged to have

been practiced by the administratrix of the Weyant estate, and the fraud found by the district court, is what is known as extrinsic as contradistinguished from intrinsic fraud. Indeed, if the fraud practiced by the administratrix in the probate proceedings of Weyant's estate is not extrinsic fraud, then it would be hard to conceive what constitutes such fraud. Practically all, if not all, of the cases cited and relied on by appellant's counsel characterize the fraud practiced in the proceedings outlined above as extrinsic fraud. We are presented with a case, therefore, where the fraud is not only extrinsic, but where it operated directly upon the court as well as upon the respondents; that is, the administratrix merely used the court as an instrumentality by means of which she gained her end, namely, to acquire the property belonging to respondents through legal forms. Moreover, this case is unique, in that the notice required by our statute was given in form, but in a false and fictitious name.

In this connection counsel for appellant insist that the statutory notice was in fact published in due form and for the time required by statute. As a matter of form that statement is undoubtedly correct. So far as the creditors of Weyant's estate were concerned, who dealt with him and knew him only by the name of Fuller, the notice referred to may be said to have been duly given. Can that, however, also truthfully be said with regard to the respondents? Was notice published in the name of Harvey W. Fuller notice to them? Would it not have had the same effect in law if the notice had been published in the name of Brown, or Jones, or Smith? Must it not be conceded, therefore, that, so far as respondents are concerned, the matter stands as though no notice was given? Let us assume that A. prefers a claim against B.; that B. is absent from, but has property, within, the state; that A., although he knows his claim is false, fraudulent, and fictitious, nevertheless causes B.'s property to be attached, and publishes notice, not in the name of B., but in a false and fictitious name, and gets judgment against B. for the amount of his claim and an order for the sale of the attached property, which is accordingly sold. Let us further

assume that the sale is reported to the court and is confirmed by it. Now, conceding the foregoing facts, is B. bound by such a judgment, unless appealed from? It would seem that no one would seriously so contend. And yet wherein, in legal effect, does the supposed case differ from the case at bar? In the case just stated B. is despoiled of his property by reason of the false and fraudulent statements of A., and by reason of the false and fictitious notice that was published. Yet no one would contend, even though the court had confirmed the sale, that B. may not have complete redress in a court of equity, at least as against A. and those in privity with him.

In this case it is also conceded that the respondents were absent from the state of Utah and did not learn nor have any knowledge of the probate proceedings until long after the time for appeal had expired. The only court that was open to them was a court of equity. If equity, therefore, is powerless to grant relief, no relief is possible. Counsel for appellant concede that equity may grant relief, but they insist that, under the authorities, and especially under the California decisions, the only relief a court of equity can grant to the respondents is to charge the administratrix, and perhaps such other persons as may have obtained the property of the estate through fraud or with knowledge thereof, as trustees and make them account to the respondents therefor, but cannot reach the sureties on the bond. The foregoing contention is, at least in part, based upon the theory that probate courts have exclusive jurisdiction of the administration of estates and that courts of equity may not interfere with that jurisdiction except in exceptional cases, and then only to a limited extent. There is, however, no such court as a probate court in this state. The only courts having general—we may say universal—original jurisdiction are the district courts, all of which are created by our Constitution. Upon those courts, in the language of article 8, section 7, of our Constitution, is conferred "original jurisdiction in all matters civil and criminal, not excepted in this Constitution, and not prohibited by law." Neither the Constitution nor the laws of this state prohibit those courts from exercising

original jurisdiction to any extent. Section 9 of the same article of the Constitution also provides:

"Appeals shall also lie from the final orders and decrees of the court in the administration of decedent estate, and in cases of guardianship, as shall be provided by law."

A reference to that section of the Constitution makes it manifest that, when it says that appeals shall lie from the final orders and decrees of *the* court, the district court, and no other court, is referred to. The district courts of this state are therefore invested with jurisdiction in probate matters precisely the same as they are invested with all other civil and criminal jurisdiction. They transact probate business as they do all other civil business. True, in administering estates they follow the established law and rules of procedure applicable to those matters, the same as they follow the established law and rules of procedure applicable to so-called equity or law cases. Moreover, our Constitution provides that "there shall be but one form of action, and law and equity may be administered in the same action." We therefore have no courts which are known as probate courts, or as law courts, or as equity courts; but we have courts possessed of general original jurisdiction, which are known as district courts. The district courts of this state, therefore, administer the estates of decedents as a part of their original jurisdiction, the same as they hear and enter judgments on promissory notes, or enter decrees in equity, foreclosing mortgages or quieting titles. The Constitution of this state, however, also, in article 1, section 11, in which is contained the Declaration of Rights, provides:

"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay."

Counsel's theory respecting action and remedies is well illustrated in their reply brief, where they insist that respondents could have availed themselves of at least four civil remedies. Strange enough they also insist that the remedy pursued by respondents is not the proper one. Such a position, therefore, assumes that forms of action still exist and that

special relief may be granted in accordance with the particular form of the action. This is manifestly fallacious. The respondents had but one state of facts to present to the court, and it is upon those facts that relief, if any is granted, must be based. It is the facts that are alleged and established at the trial, when applied to the law, that determine the nature and extent of the relief that a court may grant, and not the form of the action.

From a consideration of all the foregoing provisions and statements, it necessarily follows that in this state there is no such a thing as a particular form of action, nor a court in which particular forms of actions can be prosecuted or special remedies obtained. In this state, every person who has suffered injury to his person, to his property, or to his reputation may go into the district court, the court of original jurisdiction, and state the facts concerning his grievance, and if his statement of facts, when applied to the law entitles him to relief, the court is bound to grant him the relief to which the established facts, when applied to the law, whether legal or equitable, or both, entitled him. True, the plaintiff's rights and the relief ultimately granted, are based upon and measured by the established rules of law and procedure; but the court, in applying those rules, merely determines the nature and extent of the relief that shall be granted and enters judgment accordingly. When the respondents learned that they had been despoiled of their inheritance, and under the established rules of law and procedure they could obtain no redress by direct appeal from the decree of distribution in the probate proceeding, they were driven to seek redress in some other proceeding and by an attack upon the decree, provided they could establish the character of fraud which authorized such an attack, namely, extrinsic fraud. Under the authorities already referred to, such an attack, in this jurisdiction, is a direct attack. In our judgment the courts of this state—that is, the courts of original jurisdiction—were open to respondents for the purpose above stated, provided they properly alleged sufficient facts to invoke action by the court.

The facts they did allege in the proceedings to which reference has hereinbefore been made, and as outlined in the statement of facts herein, in our judgment, are ample to entitle them to the relief prayed for in this action. We are also of the opinion that, for the reasons already advanced, the district court of Salt Lake county, in the proceeding commenced by respondents in September, 1915, when they first learned of the fraud practiced upon them and on the court of Salt Lake county by the administratrix of the decedent's estate, was not limited to merely declaring. her a trustee, and as such holding the property in trust for respondents. To thus limit respondents, in view of the facts established in this case, would amount to a denial of any substantial relief. True, as counsel for appellant contend, the facts developed in a particular case may nevertheless be such as to entitle the complaining party to limited relief only. The facts and circumstances might, doubtless, be such that an heir, though despoiled of his inheritance by the wrongful and fraudulent acts of the administrator, might nevertheless not be permitted to recover from the sureties on the administrator's bond.

In this case, however, the administratrix, so far as respondents are concerned, acted directly contrary to and in the very teeth of the duty imposed upon her by law and by the bond that is sued on. It was the duty of the administratrix, under the law, to publish proper notice, so as to apprise the heirs, and all others' interested in the estate, of its true condition; and when she failed to do that, but published notice in a false and fictitious name, known to her to be so, she utterly failed to ''faithfully execute the duties of the trust according to law,'' as provided in the bond. Nor did she, as the bond provided, administer the estate ''for the use of the heirs'' of the deceased, as she was bound to do. Nor did the wrongs committed by her occur after the decree of distribution, nor when acting in a capacity other than that of administratrix. It is sometimes somewhat difficult to determine whether the wrongful acts complained of occurred at a time when the administrator is acting as such, or whether they oc-

curred after he had ceased to so act and acted in a different capacity. Sometimes the administrator may act in a dual capacity, one as administrator and the other as trustee, etc. There may thus be circumstances, as is well stated in some of the cases, where an administrator may have defrauded an heir while acting as trustee, and after he had ceased to act as administrator.

In the probate proceeding here in question, however, the administratrix not only failed to publish proper notice, so far as respondents are concerned, but she utterly failed to make and return a true and complete inventory of the property belonging to the estate. Again, she converted to her own use about $12,000 worth of property of the estate without making an inventory thereof, and without disclosing its existence. That act alone constituted an insufferable fraud and manifestly constituted a breach of the bond. 18 Cyc. page 1267. Moreover, all of her acts which resulted in despoiling respondents of their inheritance occurred during the administration of the estate, and not after the decree of distribution had been entered, and when the administratrix was acting in a private capacity, or in a capacity of trustee, merely. True, she was awarded possession and control of the property which was inventoried, and which was left for distribution, by the decree of distribution; but that decree was directly based upon extrinsic fraud practiced by her, which fraud likewise constituted a breach of the bond in question here. In *Ordinary* v. *Connolly,* 75 N. J. Eq. 521, 72 Atl. 363, 138 Am. St. Rep. 577, the law respecting the liability of a surety on an administrator's bond is stated thus:

"The surety of an administrator is required to bear any injurious consequences arising from loss to the estate through the administrator's default or fraud, and has no right to any favor or immunity that would not be accorded to the administrator himself."

Without pursuing the subject further, we are clearly of the opinion that the fraudulent and deceitful acts of the administratrix in this case were, each and all, committed while she acted in the capacity of administratrix, and thus constituted breaches of the bond sued on.

Appellant, however, also insists that the district court erred

in admitting in evidence against it the judgment that was entered against the administratrix in the action against her. and to which appellant was not a party, and in which the amount and value of the property converted by her was as- certained and adjudicated. This contention, in our judg- ment, is clearly untenable. The great—the overwhelming— weight of authority is to the contrary. Among the many cases that hold directly contrary to appellant's contention are the following: *Irwin* v. *Backus*, 25 Cal. 214, 85 Am. Dec. 125; *Stovall* v. *Banks*, 10 Wall. (U. S.) 583, 19 L. Ed. 1036; *Bel- linger* v. *Thompson*, 26 Or. 320, 37 Pac. 714, 40 Pac. 229; *Deobold* v. *Oppermann*, 111 N. Y. 531, 19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760; *Meyer* v. *Barth*, 97 Wis. 352, 72 N. E. 748, 65 Am. St. Rep. 124; 2 Black, Judgments, section 589; Jones, Evidence (2d Ed.) section 591; Brandt, Surety- ship, etc., section 712. In the annotator's note, Ann. Cas. 1915D, at page 402, it is said:

"The majority of the cases hold that from the nature of the obligation entered into by the sureties on an executor's or adminis- trator's bond, making them privy to the proceedings against their principal, they are bound and concluded, in the absence of fraud or collusion, by a judgment against their principal, even though they were not parties to the proceeding."

In support of the foregoing text cases are cited from 22 jurisdictions. We remark that in Nebraska, from which state a case is cited in the foregoing note, it is held that, while the judgment against the principal is always admissible in evi- dence against the surety, yet it is only prima facie evidence against him. In a great majority of the jurisdictions, how- ever, it is squarely held that, in the absence of fraud or collu- sion, the judgment against the principal is conclusive against the surety.

In the section cited from Jones on Evidence the author, in referring to administrators' bonds, says:

"In the opinion of the author the weight of authority sustains the view that in such cases the judgment is conclusive against the surety, on the principle that he has in effect contracted to be bound thereby."

In the note in 132 Am. St. Rep., commencing on page 764,

in speaking of the rules that apply to sureties on adminis-
trator's bonds, it is said:

"A careful search of the authorities will disclose that, mainly
on the principle above quoted, practically the whole of the de-
cisions under this head are that the sureties in probate matters
are bound by the decree or judgment against their principals."

Many cases are cited in support of the text, which it is
not necessary to refer to here.

It is not necessary to pursue this subject further. As we
view it, in view that the sureties stand in privity with
the administrator they necessarily must be held bound      7
by the judgment against him in which it is adjudicated
that he has failed to discharge his duty and has breached the
conditions of the bond, unless they can show that the judg-
ment was in truth and in fact obtained through fraud or col-
lusion.

It is, however, also contended with much force and vigor
by appellant's counsel that no judgment is permissible, in-
deed, that no action can successfully be maintained against
a surety, so long as the judgment of discharge stands in fa-
vor of the principal and surety. That, it is contended, is the
case here. In other words, counsel contend that neither the
final settlement, nor the decree of distribution, nor the dis-
charge of the administratrix and of their client, has ever been
set aside or vacated by the court. As we pointed out in our
statement of facts, the district court did not in express terms
vacate or set aside either the decree of distribution or the
judgment or order discharging the administratrix from fur-
ther liability. It must be conceded that it is generally held
by the courts that where a final allowance and settlement of
the accounts of the administrator have been approved, and a
final decree of distribution has been entered, which is fol-
lowed by a discharge of the administrator and the sureties on
the bond, those orders and decrees must be vacated before an
action can successfully be maintained and a judgment en-
tered against the sureties on the bond. But in Brandt,
Suretyship, etc., section 712, it is said:

"The sureties of an administrator or guardian are not protected
by a final settlement with, and discharge of, their principal, when

it is made fraudulently and without notice to the parties in interest."

Let it be conceded, however, for the purposes of this decision, that where the final account of the administrator has been allowed and approved, and a final decree of distribution has been entered, which is followed by a discharge, it is necessary to institute and prosecute an action in which it is found and adjudicated that the allowance and settlement of the final account, the decree of distribution, and the discharge were each and all obtained through the extrinsic fraud of the administrator, and that the distributee of the estate has obtained the property by means of such fraud. Where, however, it is also found and adjudicated that all of the proceedings during the administration of the estate, and especially the allowance and approval of the final account, the distribution of the estate, and the discharge of the administrator and the sureties, were each and all based upon and obtained by means of the extrinsic and insufferable fraud of the administrator while acting as such, must it (when these things are found and adjudicated) also be followed by an express statement in the findings and judgment that the settlement and the decree of distribution and discharge, when thus obtained, are vacated and set aside? In such a case, and under such circumstances, but one legal effect or conclusion is permissible, namely, that the orders, decrees, and discharge, being based on and steeped in extrinsic fraud, can have no further force or effect. That is precisely what is accomplished, and all that is accomplished, by an express statement that the orders, decrees, and discharge are vacated and held for naught. It would be impossible to more completely hold for naught the allowance of the final account, the entry of the final decree of distribution, and the discharge by any statement which the court would be capable of making than is the case by what is found and adjudicated in this case, an outline of which we have given in the statement of facts.

In our judgment, it would be a mere play upon words, and a positive reproach to both the law and the courts, if in the face of the findings and adjudication to which we have repeatedly referred, it were held that the orders, final decree

of distribution, and discharge, which were obtained by fraud, were not set aside, but still remain in full force and effect. As a matter of law it is just as impossible for the final settlement, the decree of distribution, and the discharge to stand and be in force at the same time that the findings, conclusions of law, and the decree in the Morgan case or action are in force and effect, as it is impossible in physics to have two objects occupy the same place at the same time. Moreover, the principle may be applied here that where several contracts are entered into, or several statutes are passed, or different judgments have been entered covering the same subject, in which there are statements or provisions that are so repugnant to each other that both cannot stand, then the provision of the contract that was earliest in time, or of the statute that was first passed, or the judgment that was first entered, must give way to the conflicting provisions of the later contract, statute or decree. In this case the findings and judgment in the Morgan Case, which are later in time, are utterly repugnant to the decree of distribution and the discharge, and for that reason the latter must fail, say nothing about the fact that both are based upon insufferable fraud and deceit, and for that reason are also utterly devoid of any force or effect.

We remark that by what we have here said upon the proposition just discussed no adverse criticism of counsel is intended. We are well aware that in the presentation of causes circumstances and conditions often arise which are well expressed by the Oriental poet in the statement that—

"A hair perhaps divides the false and true."

While counsel may be justified in arguing that, in view that the decree of distribution and the discharge of the administratrix have not in express terms been set aside, and therefore they are still in force and effect, yet a court would not be justified in holding that because a judgment or decree is not expressed in particular phraseology, or because a particular formula of words was not followed, therefore it is without force or effect. To do that would be to sacrifice substance for mere form, and refuse to give effect to the manifest purposes and intentions of both the court and the parties to

the action.  Courts must give effect to that which is unavoidably and necessarily implied in a judgment or decree, as well as to that which is expressed in the most appropriate language.

It is, however, further contended that all that was accomplished by the action against the administratrix, and all that was intended therein, was to charge her with holding the property of the estate which she had obtained by means of her fraud and wrongdoing in trust for the respondents.  If that had been the only purpose, it is not easy to perceive why the present action against the appellant was commenced.  Before the appellant could be proceeded against on the bond on which it was surety, it was necessary to establish the default of the administratrix and the extent of her defalcation.  That was done in the action against her.  The mere fact that in that action she was also declared trustee, and that certain property was recovered, in no way militates against respondents' rights to maintain this action against the appellant as surety on the bond.  What property was obtained in the action against the administratrix was for the benefit of appellant, precisely the same as it was for the benefit of respondents, and the latter cannot again recover from the appellant what they recovered in that action against the administratrix.  The fact, therefore, that the court, in the action against the administratrix, charged her as trustee cannot affect respondents' rights to obtain judgment in this action on the bond for any amount which the administratrix as such converted to her own use and which was not accounted for in the action against her.

Appellant also contends that respondents were guilty of laches, etc.  In the face of the undisputed facts, we cannot conceive how such a contention can prevail against them.  They moved just as soon as they discovered the death of the husband and father and that fraud had been perpetrated in administering his estate.  What more could they have done?

Something is also said about respondents being charged with Weyant's wrong in assuming and in living under a false and fictitious name.  No doubt the sins of the

parent are often visited upon his offspring, but we cannot see why, either in law or in justice, that burden should be placed upon the respondents under the circumstances of this case. True it is that sureties, ordinarily, are deemed the favorites of the law, and while their liability will not be extended beyond the express terms of their obligations, yet, when the obligations assumed by the surety are clearly established courts will enforce them the same as other obligations. *Blyth-Fargo Co.* v. *Free,* 46 Utah, 233, 148 Pac. 427; *Daly* v. *Old,* 35 Utah, 83, 99 Pac. 460, 28 L. R. A. (N. S.) 463. In this case the appellant, and not the respondents, vouched for the official acts and conduct of the administratrix. As we have seen, she violated her trust, not only by misrepresentation and deceit, but she converted a very large sum of money belonging to the estate to her own use without ever disclosing its existence, and she has either concealed or dissipated practically all of the estate, which probably amounted to upwards of $40,000, all of which she did by means of fraud and deceit practiced by her while acting in her official capacity.

If appellant can find any property belonging to the estate, it, in case it satisfies the judgment in favor of respondents, will be subrogated to all of their rights with respect to that property, and may, for that purpose, charge the administratrix as a trustee for its benefit. Where one of two innocent parties must necessarily suffer, it is not always a matter of easy solution which of the two shall bear the burden. In this case, the appellant has however, placed itself in privity with the administratrix, and has vouched for her official acts and conduct, and hence it should bear the loss rather than the respondents.

After a careful consideration of the somewhat peculiar, if not unique, facts and circumstances of this case, and the law applicable, we have been forced to the conclusion that the judgment of the district court is right and should prevail.

The judgment is therefore affirmed, at appellant's costs.

CORFMAN, WEBER, GIDEON, and THURMAN, JJ., concur.

ON APPLICATION FOR REHEARING.

## FRICK, J.

Mr. James Ingebretsen, one of appellant's counsel, has filed a petition for rehearing, in which two grounds are stated why a rehearing should be granted, namely:

"(1) That the court apparently failed to note the precise terms of the decree rendered by Judge Lewis in the *Weyant-Morgan* case; (2) that the court omitted to consider the authorities upon the legal effect of this decree."

In concluding a somewhat vigorous argument in support of his petition counsel says:

"In view of our blamelessness, and that the Weyants have recovered a large part of the estate, and that part of this judgment is for items such as rent for the property after distribution, and that we have parted with such security as we had and gained nothing for ourselves, and that no reserve or other precaution exists for such a liability, I had hoped and still hope that the court might kindly consider and follow the conclusion reached in the several similar cases we have cited, especially since there cannot be found in all the world a similar case in which the surety has been held."

In this connection he also complains that we did not refer to some of the cases cited by him, and for that reason seems persuaded that we did not consider them.

In the opinion the writer explicitly stated the reason why more of the numerous cases referred to by counsel were not reviewed. In a case like this, where so many cases are referred to, which have only a remote bearing upon the principal question presented, and in which the controlling facts clearly differ from the facts stated in the cited cases, it is impracticable, if not impossible, to distinguish the numerous cases and set forth the reasons at length why they are not controlling. The writer took special pains to set forth at least the controlling facts in detail in the opinion. No fault is found with the statement as made. In formulating the conclusion he again attempted to state them as explicitly as possible under the circumstances. The facts and the reasons for the conclusion reached, as well as the law deemed applicable

to the peculiar features of this case, were all thoroughly considered by all the members of this court, not only once, but several times, and, after doing so, the conclusion was, and still is, unanimous that no other result save the one announced in the opinion is permissible. In view, however, that counsel insists that our conclusion is contrary to the cases he cited in his orignl bref, we here cite all that he nw relies on in his petition for rehearing, namely: *Silva* v. *Santos,* 138 Cal. 536, 71 Pac. 703; *Curtis* v. *Schell,* 129 Cal. 208, 61 Pac. 951, 79 Am. St. Rep. 107; *Estate of Hudson,* 63 Cal. 454; *Estate of Walker,* 160 Cal. 547, 117 Pac. 510, 36 L. R. A. (N. S.) 89; *Evans* v. *Evans* (Ala.) 76 South. 95; *Sohler* v. *Sohler,* 135 Cal. 323, 67 Pac. 282, 87 Am. St. Rep. 98; *Estate of Leavens,* 65 Wis. 440, 27 N. W. 324; *Turner* v. *Cole,* 24 Ala. 364. We refer to those cases, however, only so that the reader may, if he so desires, examine them, and not for the purpose of now reviewing them.

In this connection it is, however, only fair to state that we cannot agree with counsel's contention that in the foregoing cases the law is stated that where a court adjudges that a defaulting administrator holds the property which is still in his possession, and which was wrongfully converted by him while acting as administrator, in trust for the heir or creditor of the estate, as the case may be, that, under facts and circumstances like those in the case at bar, the surety on his bond may not be held liable for the value of the property so wrongfully converted and which cannot be recovered from the administrator. That is the crux of this case. Counsel entirely ignores or overlooks the all-potent fact ever present in this case, that the respondents at no time were brought into court. He assumes that, because the notice published by the administratrix in the name of Fuller was sufficient to bring those who transacted business with the deceased and who knew him only by that name into court, therefore it was sufficient to bring in the respondents. Not so. The respondents were never brought within the jurisdiction of the court, and hence not into the probate proceedings, and therefore any decree rendered in those proceedings, so far as they were concerned, was a mere nullity.

That proposition is illustrated in the case of *In re Killian*, 172 N. Y. 547, 65 N. E. 561, 63 L. R. A. 95, where a party interested in an estate was not served with notice, and it was there held that the decree in the probate proceeding had no binding force as to him. The foregoing proposition is, however, so elementary that no citation of authority should be required. The following cases also clearly support the conclusion reached in the principal opinion, namely: *Fisher* v. *Wood et al.*, 65 Tex. 199; *Maney* v. *Casserly*, 134 Mich. 252, 96 N. W. 478. In the Texas case it is expressly held that a defaulting executor may be charged as trustee, and after the property found in his hands is exhausted "the plaintiffs will have to look to the executor and his bondsmen." Why not? What is an administrator's bond given for, if it is not to protect the heir against the wrongful official acts of the administrator in administering the estate? In view that in this case the administratrix practiced fraud upon the court, upon the surety on her bond, and upon the heirs alike, does not change the rule, although her wrongful acts fall with peculiar severity upon the surety. The surety vouched for her official conduct, and, however innocent, must nevertheless bear the burden as against the heirs, who are likewise innocent, and for whose protection the law required the giving of a bond.

The contention that we quoted the conclusion of law found in the second case, instead of the one found in the first one, is too trivial to require special comment. The conclusion of law we quoted in the opinion was inevitable, in view of the facts found in both cases and therefore, although counsel's contention be conceded to be correct, it has no bearing upon the result.

We are still of the opinion that the conclusion reached is sound, and hence should prevail. The petition for a rehearing is therefore denied.

CORFMAN, WEBER, GIDEON, and THURMAN, JJ., concur.