FLORENCE KOTECKI, Appellant, v. ARPAD
PETER AUGUSZTINY, Respondent.

No. 6325

August 3, 1971                    487 P.2d 925

[Rehearing denied September 1, 1971]

*R. Paul Sorenson,* of Las Vegas, for Appellant.

*Cromer & Barker,* and *Kent W. Michaelson,* of Las Vegas, for Respondent.

394

## OPINION

By the Court, THOMPSON, J.:

This appeal is from an order of the district court dismissing the petition of Florence Kotecki, nominee of creditors of the estate of Doris M. Parker (also known as Doris M. Augusztiny), for letters of general administration.[1] The object of the petition was to secure a defendant upon whom process could be served in a wrongful death action previously filed by the creditors, and to whom proper claims could be presented. Bodine v. Stinson, 85 Nev. 657, 461 P.2d 868 (1969). Dismissal of the petition was entered for the reason that the administration of the Estate had already been closed and the administrator discharged.

The wrongful death action was commenced on January 31, 1966, by the heirs of Clarence A. Hodges to recover damages alleged to have resulted from his death, and to have been caused by the malpractice of several joined defendants, including a nurse anesthetist known professionally as Doris M. Parker. Doris M. Parker had died several months before the action was commenced, and the administration of her estate under her married name of Augusztiny was promptly instituted and was completed by January 28, 1966, when the administrator was discharged. Her married name was used throughout the estate proceeding, and all papers, including the notice to creditors, were in the "Matter of the Estate of Doris M. Augusztiny, deceased," without reference at any time to her professional name of Doris M. Parker by which she was commonly known to persons in need of her professional attention. It is for this reason that the creditors, that is, the wrongful death claimants, did not present their claims to the administrator of the Augusztiny Estate. Upon learning that Parker and Augusztiny were

---

[1]NRS 155.190(1)(13) provides for an appeal from an order granting or revoking letters of administration or from an order refusing to do so where the amount in controversy equals or exceeds $1,000, exclusive of costs.

one and the same person, the claimants attempted to pursue the procedural course outlined in *Bodine,* supra, but were denied relief, since administration of the estate had been completed. The district court apparently believed that because the notice to creditors given in the name of Augusztiny complied with NRS 139.100(1), it was "conclusive upon all persons," NRS 155.010(4), including creditors who knew the deceased only as Parker, and that therefore their claims were forever barred, NRS 147.130(1). We do not share that view, and reverse.

1. The problem essentially is one of due process. "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Cf. Mullane v. Central Hanover B. & T. Co., 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865, 874 (1950); cf. Schroeder v. New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962). In short, the purpose of notice is to give notice. Thus, the Supreme Court of Utah has ruled that notice published in an assumed name wholly different from the true name of the decedent was not notice to those who knew the decedent by his true name, and allowed an independent action upon the statutory administrator's bond after the estate had been closed. Weyant v. Utah Savings & Trust Co., 182 P. 189, 9 A.L.R. 1119 (Utah 1919). The same reasoning applies with equal force to the instant matter. Notice given in the decedent's married name is not notice to those who knew her under an assumed name commonly used, and it is no answer to say that notice was given in the form allowed by statute. The following expression from *Weyant* is on point.

"In this connection counsel for appellant insist that the statutory notice was in fact published in due form and for the time required by statute. As a matter of form that statement is undoubtedly correct. So far as the creditors of Weyant's estate were concerned, who dealt with him and knew him only by the name of Fuller, the notice referred to may be said to have been duly given. Can that, however, also, truthfully be said with regard to the respondents? Was notice published in the name of Harvey W. Fuller notice to them? Would it not have had the same effect in law if the notice had been published in the name of Brown, or Jones, or Smith? Must it not be conceded, therefore, that, so far as respondents are concerned, the matter stands as though no notice was given?" 9 A.L.R., at 1129–1130.

Although no claim is made that actual fraud was perpetrated upon the creditors who knew the deceased only as Parker, the consequences are the same. The failure to notify the creditors of Parker as well as the creditors of Augusztiny was the equivalent of an affirmative act of fraud, cf. Villalon v. Bowen, 70 Nev. 456, 470, 273 P.2d 409, 414 (1954), and effectively deprived them of the opportunity to present their claims.

2. Contrary to respondent's contentions, appellant's request for letters of administration would not constitute a "collateral attack" on the order discharging the first administrator, even had persons with claims against "Doris M. Parker" been given due notice in the original estate proceedings. As in most states, our law provides for "subsequent administration," as follows: "The final settlement of an estate shall not prevent a subsequent issuance of letters testamentary or letters of administration should other property of the estate be discovered, or should it become necessary or proper, from any cause, that letters should again be issued." NRS 151.240. Under such a statute, the court may issue further letters when "there is property not fully disposed of or some act to be done which only an administrator can do." Bancroft's Probate Practice, § 1188, at 516 (2nd Ed. 1950).

Had proper notice to creditors been given in the original proceedings, in any subsequent administration, claims could not be satisfied out of property administered and distributed in the first. Here, however, there remains property that may properly be made the subject of subsequent administration. In Bodine v. Stinson, supra, we said: "It is well established that a deceased insured's potential right of exoneration under an insurance policy is a sufficient estate to justify a grant of administration, and we think, satisfies the requirement of In re Dickerson's Estate, 51 Nev. 69, 268 P. 769, that an estate exist before administration is justified." 85 Nev., at 659. In Bodine, we held that a *special administratrix* could not properly be appointed to defend an action against a deceased tortfeasor, noting that "[a] general administrator would have authority to act upon wrongful death claims. NRS 147.110." 85 Nev., at 660. And we said: "The procedure to be followed is the same in every case without regard to the issue of insurance." 85 Nev., at 661.

In *Bodine,* of course, we were not concerned with "subsequent administration" under NRS 151.240, premised on the

proposition that there remained a policy of insurance not part of the estate disposed of in the original proceeding. Here, appellant not only has averred that an insurance policy remained subject to administration, but the counsel retained by respondent's insurance carrier to resist administration acknowledged during oral argument that the policy was not in issue or distributed in the original proceeding, and was not exhausted by any claims being made against it. Under NRS 151.240, the lower court's jurisdiction to appoint an administratrix *de bonis non* is clear and, where a court has jurisdiction to appoint an administratrix, her appointment cannot be attacked collaterally. Cf. Forrester v. S. P. Co., 36 Nev. 247, 134 P. 753 (1923). Thus, properly viewed, we think the tactics employed in respondent's name savor more of a "collateral attack" than do appellant's proceedings.

Because of our views as expressed herein, we find it unnecessary to treat other contentions made by the parties.

Reversed.

ZENOFF, C. J., BATJER, MOWBRAY, and GUNDERSON, JJ., concur.