130 Nev., Advance Opinion 75

## IN THE SUPREME COURT OF THE STATE OF NEVADA

SFR INVESTMENTS POOL 1, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Appellant,
vs.
U.S. BANK, N.A., A NATIONAL
BANKING ASSOCIATION AS
TRUSTEE FOR THE CERTIFICATE
HOLDERS OF THE BANC OF
AMERICA MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES
2008-A,
Respondent.

No. 63078

FILED

SEP 18 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order dismissing a complaint and denying injunctive relief. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

*Reversed and remanded.*

Howard Kim & Associates and Jacqueline A. Gilbert, Howard C. Kim, and and Diana S. Cline, Henderson,
for Appellant.

Akerman LLP and Ariel E. Stern and Natalie L. Winslow, Las Vegas,
for Respondent.

BEFORE THE COURT EN BANC.

## *OPINION*

By the Court, PICKERING, J.:

NRS 116.3116 gives a homeowners' association (HOA) a superpriority lien on an individual homeowner's property for up to nine months of unpaid HOA dues. With limited exceptions, this lien is "prior to all other liens and encumbrances" on the homeowner's property, even a first deed of trust recorded before the dues became delinquent. NRS 116.3116(2). We must decide whether this is a true priority lien such that its foreclosure extinguishes a first deed of trust on the property and, if so, whether it can be foreclosed nonjudicially. We answer both questions in the affirmative and therefore reverse.

I.

This dispute involves a residence located in a common-interest community known as Southern Highlands. The property was subject to Covenants, Conditions, and Restrictions (CC&Rs) recorded in 2000. In 2007 it was further encumbered by a note and deed of trust in favor of, via assignment, respondent U.S. Bank, N.A. By 2010, the former homeowners, who are not parties to this case, had fallen delinquent on their Southern Highlands Community Association (SHHOA) dues and also defaulted on their obligations to U.S. Bank. Separately, SHHOA and U.S. Bank each initiated nonjudicial foreclosure proceedings.

Appellant SFR Investments Pool 1, LLC (SFR) purchased the property at the SHHOA's trustee's sale, which took place on September 5, 2012. SFR received and recorded a trustee's deed reciting compliance with all applicable notice requirements. In the meantime, the trustee's sale on U.S. Bank's deed of trust had been postponed to December 19, 2012. Days before then, SFR filed an action to quiet title and enjoin the sale. SFR

 

alleged that the SHHOA trustee's deed extinguished U.S. Bank's deed of trust and vested clear title in SFR, leaving U.S. Bank nothing to foreclose.

The district court temporarily enjoined the U.S. Bank trustee's sale pending briefing and argument on SFR's motion for a preliminary injunction. Ultimately, the district court denied SFR's motion for a preliminary injunction and granted U.S. Bank's countermotion to dismiss. It held that an HOA must proceed judicially to validly foreclose its superpriority lien. Since SHHOA foreclosed nonjudicially, the district court reasoned, U.S. Bank's first deed of trust survived the SHHOA trustee's sale and was senior to the trustee's deed SFR received.

SFR appealed. The district court stayed U.S. Bank's trustee's sale pending decision of this appeal.

## II.

### A.

The HOA lien statute, NRS 116.3116, is a creature of the Uniform Common Interest Ownership Act of 1982, § 3-116, 7 U.L.A., part II 121-24 (2009) (amended 1994, 2008) (UCIOA), which Nevada adopted in 1991, 1991 Nev. Stat., ch. 245, § 1-128, at 535-79, and codified as NRS Chapter 116. *See* NRS 116.001. One purpose of adopting a Uniform Act like the UCIOA is "to make uniform the law with respect to [its] subject [matter] among states enacting it." NRS 116.1109(2). Thus, in addition to the usual tools of statutory construction, we have available the comments of the National Conference of Commissioners on Uniform State Laws, national commentary, and other states' cases to explicate NRS Chapter 116. 2A Norman J. Singer & Shambie Singer, *Sutherland Statutory Construction* § 48:11, at 603-08 (7th ed. 2014); *see Casey v. Wells Fargo Bank, N.A.*, 128 Nev. ___, ___, 290 P.3d 265, 268 (2012).

NRS 116.3116(1) gives an HOA a lien on its homeowners' residences—the UCIOA calls them "units," *see* NRS 116.093—"for any construction penalty that is imposed against the unit's owner . . . , any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due." NRS 116.3116(2) elevates the priority of the HOA lien over other liens. It states that the HOA's lien is "prior to all other liens and encumbrances on a unit" except for:

> (a) Liens and encumbrances recorded before the recordation of the declaration [creating the common-interest community] . . . ;
>
> (b) *A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent . . .* ; and
>
> (c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

NRS 116.3116(2) (emphasis added). If subsection 2 ended there, a first deed of trust would have complete priority over an HOA lien. But it goes on to carve out a partial exception to subparagraph (2)(b)'s exception for first security interests:

> *The [HOA] lien is also prior to all security interests described in paragraph (b)* to the extent of any [maintenance and nuisance-abatement] charges incurred by the association on a unit pursuant to NRS 116.310312 and *to the extent of the assessments for common expenses* [i.e., HOA dues] based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien, unless federal regulations adopted by the Federal Home Loan Mortgage Corporation or the

SUPREME COURT
OF
NEVADA

(O) 1947A

4

Federal National Mortgage Association require a shorter period of priority for the lien. . . . *This subsection does not affect* the priority of mechanics' or materialmen's liens, or *the priority of liens for other assessments made by the association.*

NRS 116.3116(2) (emphases added).[1]

As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

NRS 116.3116 largely tracks section 3-116(a)-(i) of the 1982 UCIOA.[2] But it does not use the language in subsections (j) and (k) of UCIOA § 3-116, which offer alternative HOA lien foreclosure provisions for adaptation to local law. *See* 1982 UCIOA § 3-116(j)(1) ("In a condominium or planned community, the association's lien must be

---

[1]UCIOA § 3-116 differs from NRS 116.3116(1) in that it limits the superpriority to six rather than nine months of unpaid dues, does not make provision for Federal Home Loan Mortgage Corporation and Federal National Mortgage Association regulations, and does not include maintenance and nuisance-abatement charges in the superpriority lien.

[2]NRS 116.3116(3) was added in 2013, 2013 Nev. Stat., ch. 552, § 7, at 3788, and is unique. NRS 116.3116(11) was added in 2011, 2011 Nev. Stat., ch. 389, § 49, at 2450 (renumbered from subsection 10 to 11 by 2013 Nev. Stat., ch. 552, §7 at 3789), and replicates subparagraph (*l*) of the 1994 version and subparagraph (m) of the 2008 version of the UCIOA. *See* UCIOA § 3-116(m) (2008), 7 U.L.A., part IB 377 (2009); UCIOA § 3-116(*l*) (1994), 7 U.L.A., part IB 571-72 (2009). *See* note 1 above for additional variations.

SUPREME COURT
OF
NEVADA

(O) 1947A

foreclosed in like manner as a mortgage on real estate [or by power of sale under [insert appropriate state statute]].");  *id.* § 3-116(k) (offering an optional fast-track foreclosure method for cooperatives, which often carry substantial debt service obligations).  Instead, the Nevada Legislature handcrafted a series of provisions to govern HOA lien foreclosures, NRS 116.31162 through NRS 116.31168, and refashioned 1982 UCIOA §§ 3-116(j)(2) and (3), concerning cooperatives, as NRS 116.3116(10).

To initiate foreclosure under NRS 116.31162 through NRS 116.31168, a Nevada HOA must notify the owner of the delinquent assessments.  NRS 116.31162(1)(a).  If the owner does not pay within 30 days, the HOA may record a notice of default and election to sell.  NRS 116.31162(1)(b).  Where the UCIOA states general third-party notice requirements, *see* 1982 UCIOA § 3-116(j)(4) ("In the case of foreclosure under [insert reference to state power of sale statute], the association shall give reasonable notice of its action to all lien holders of the unit whose interest would be affected."), NRS 116.31168 imposes specific timing and notice requirements.

"The provisions of NRS 107.090," governing notice to junior lienholders and others in deed-of-trust foreclosure sales, "apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed."  NRS 116.31168(1).  The HOA must provide the homeowner notice of default and election to sell; it also must notify "[e]ach person who has requested notice pursuant to NRS 107.090 or 116.31168" and "[a]ny holder of a recorded security interest encumbering the unit's owner's interest who has notified the association, 30 days before the recordation of the notice of default, of the existence of the security interest."  NRS 116.31163(1), (2).  The homeowner must be given at least 90 days to pay

off the lien. NRS 116.31162. If the lien is not paid off, then the HOA may proceed to foreclosure sale. *Id.* Before doing so, the HOA must give notice of the sale to the owner and to the holder of a recorded security interest if the security interest holder "has notified the association, before the mailing of the notice of sale of the existence of the security interest." NRS 116.311635(1)(b)(2); *see* NRS 107.090(3)(b), (4) (requiring notice of default and notice of sale to "[e]ach other person with an interest whose interest or claimed interest is subordinate to the deed of trust").

NRS 116.31164 addresses the procedure for sale upon foreclosure of an HOA lien and specifies the distribution order for the proceeds of sale. A trustee's deed reciting compliance with the notice provisions of NRS 116.31162 through NRS 116.31168 "is conclusive" as to the recitals "against the unit's former owner, his or her heirs and assigns, and all other persons." NRS 116.31166(2). And, "[t]he sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption." NRS 116.31166(3).

## B.

U.S. Bank maintains that NRS 116.3116(2) merely creates a payment priority as between the HOA and the beneficiary of the first deed of trust. If so, then the dues and maintenance and nuisance-abatement piece of the HOA lien does not acquire superpriority status until the beneficiary of the first deed of trust forecloses, at which point, to obtain clear, insurable title, the foreclosure-sale buyer would have to pay off that piece of the HOA lien. But if the superpriority piece is a true priority lien, then it is senior to the first deed of trust. As such, it can be foreclosed and its foreclosure will extinguish the first deed of trust. *See, e.g.,* Restatement (Third) of Prop.: Mortgages § 7.1 (1997) ("A valid foreclosure

SUPREME COURT
OF
NEVADA

(O) 1947A

7

of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed and whose holders are properly joined or notified under applicable law.").

Nevada's state and federal district courts are divided on whether NRS 116.3116 establishes a true priority lien. *Compare 7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("[A] foreclosure sale on the HOA super priority lien extinguishes all junior interests, including the first deed of trust."), *Cape Jasmine Court Trust v. Cent. Mortg. Co.*, No. 2:13-CV-1125-APG-CWH, 2014 WL 1305015, at *4 (D. Nev. Mar. 31, 2014) (same), *and First 100, LLC v. Burns*, No. A677693 (8th Jud. Dist. Ct. May 31, 2013) (order denying motion to dismiss) (same), *with Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1225 (D. Nev. 2013) ("The super-priority amount is senior to an earlier-recorded first mortgage in the sense that it must be satisfied before a first mortgage upon its own foreclosure, but it is *in parity with* an earlier-recorded first mortgage with respect to extinguishment, i.e., the foreclosure of neither extinguishes the other.") (emphasis in original); *Weeping Hollow Ave. Trust v. Spencer*, No. 2:13-CV-00544-JCM-VCF, 2013 WL 2296313, at *6 (D. Nev. May 24, 2013) (same), *and Diakonos Holdings, LLC v. Countrywide Home Loans, Inc.*, No. 2:12-CV-00949-KJD-RJJ, 2013 WL 531092, at *3 (D. Nev. Feb. 11, 2013) (similar).

Textually, NRS 116.3116 supports the *Limbwood, Cape Jasmine*, and *First 100* view that it establishes a true priority lien. NRS 116.3116(2) does not speak in terms of *payment* priorities. It states that the HOA "lien . . . is *prior to*" other liens and encumbrances "except . . . [a] first security interest," then adds that, "The lien is *also prior to* [first]

security interests" to the extent of nine months of unpaid HOA dues and maintenance and nuisance-abatement charges. *Ibid.* (emphases added). "Prior" refers to the lien, not payment or proceeds, and is used the same way in both sentences, a point the phrase *"also* prior to" drives home. And "priority lien" and "prior lien" mean the same thing, according to *Black's Law Dictionary* 1008 (9th ed. 2009): "A lien that is superior to one or more other liens on the same property, usu. because it was perfected first."

The official comments to UCIOA § 3-116 confirm its text. Payment priority proponents insist that the statute cannot mean what it says because the result—a split lien, a piece of which has priority over a first deed of trust—is unprecedented. *Cf. Bayview Loan Servicing,* 962 F. Supp. 2d at 1226 (observing that, "the real estate community in Nevada clearly understands the statutes to work the way the Court finds," that is to say, as establishing only a payment priority). But the official comments to UCIOA § 3-116 forthrightly acknowledge that the split-lien approach represents a "significant departure from existing practice." 1982 UCIOA § 3-116 cmt. 1; 1994 & 2008 UCIOA § 3-116 cmt. 2. It is a specially devised mechanism designed to "strike[ ] an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interests of lenders." *Id.* The comments continue: "As a practical matter, secured lenders will most likely pay the 6 [in Nevada, nine, *see supra* note 1] months' assessments demanded by the association *rather than having the association foreclose on the unit." Id.* (emphasis added). If the superpriority piece of the HOA lien just established a payment priority, the reference to a first security

holder paying off the superpriority piece of the lien to stave off foreclosure would make no sense.[3]

"An official comment written by the drafters of a statute and available to a legislature before the statute is enacted has considerable weight as an aid to statutory construction." *Acierno v. Worthy Bros. Pipeline Corp.*, 656 A.2d 1085, 1090 (Del. 1995). The comments to the 1982 UCIOA were available to the 1991 Legislature when it enacted NRS Chapter 116. Even though the comments emphasize that the split-lien approach is "[a] significant departure from existing practice," 1982 UCIOA § 3-116 cmt. 1, the Legislature enacted NRS 116.3116(2) with UCIOA § 3-116's superpriority provision intact. From this it follows that, however unconventional, the superpriority piece of the HOA lien carries true priority over a first deed of trust.

The Uniform Law Commission (ULC) has established a Joint Editorial Board for Uniform Real Property Acts (JEB), made up of members from the ULC; the ABA Section of Real Property, Probate and Trust Law; and the American College of Real Estate Lawyers, which "is responsible for monitoring all uniform real property acts," of which the UCIOA is one, http://www.uniformlawcommission.com/Committee. aspx?title=Joint Editorial Board for Uniform Real Property Acts. The JEB's 2013 report entitled, *The Six-Month "Limited Priority Lien" for Association Fees Under the Uniform Common Interest Ownership Act,*

---

[3]The lion's share of most HOA liens will be the unpaid dues, which have superpriority status. This does not make NRS 116.3116(2)(b) superfluous as U.S. Bank suggests, citing *Bayview Loan Servicing*, 962 F. Supp. 2d at 1227. It simply reflects the policy choices underlying the statute as structured.

SUPREME COURT OF NEVADA

(O) 1947A

also supports that § 3-116(b) establishes a true priority lien.[4] Addressing the recent foreclosure crisis and the incentives the crisis created for first security holders to strategically delay foreclosure, this report canvasses the case law construing the UCIOA's superpriority lien. It endorses the decision in *Summerhill Village Homeowners Ass'n v. Roughley*, 289 P.3d 645, 647-48 (Wash. Ct. App. 2012), which, addressing a statute using the same superpriority language as NRS 116.3116(2), holds that an HOA's judicial foreclosure of the superpriority piece of its lien extinguished the first deed of trust. JEB, *The Six-Month "Limited Priority Lien,"* at 8-9. The report then criticizes by name two of the three Nevada federal district court cases cited above as being on the payment-priority side of the NRS 116.3116(2) split—*Weeping Hollow* and *Diakonos*—saying they "misread and misinterpret the Uniform Laws limited priority lien provision,

---

[4]The dissent dismisses the work of the ULC JEB as "post-hoc commentary" that is "not persuasive" with respect to the judicial v. nonjudicial foreclosure issue addressed in Section II.C, *infra*. These observations mistake our reliance on the 2013 ULC JEB report for guidance as a legislative-intent analysis, which it is not—the "intent" of the 1991 Legislature that adopted the 1982 UCIOA could hardly be affected by comments 20+ years in the future. Courts often rely on post-enactment ULC Editorial Board commentary as persuasive, though not mandatory, precedent; doing so here is consistent with the mandate that we interpret the UCIOA, like other Uniform Acts, "to make uniform the law with respect to the subject of [the act] among states enacting it." NRS 116.1109(2); *e.g.*, *Chase Plaza Condo. Ass'n v. JPMorgan Chase Bank, N.A.*, ___ A.3d ___, ___, 2014 WL 4250949, at *10 n.5 (D.C. Aug 28, 2014) (relying on the ULC JEB report cited in the text as persuasive authority); *Export-Import Bank of United States v. Asia Pulp & Paper Co.*, 609 F.3d 111, 119-20 & 119 n.8 (2d Cir. 2010) (consulting post-enactment commentary by the ULC's Permanent Editorial Board for the Uniform Commercial Code (UCC) in interpreting a particular UCC provision).

which . . . constitutes a true lien priority, [such that] the association's proper enforcement of its lien . . . extinguish[es] the otherwise senior mortgage lien." *Id.* at 10 n.9.

The comments liken the HOA lien to "other inchoate liens such as real estate taxes and mechanics liens." 1994 & 2008 UCIOA § 3-116 cmt. 1. An HOA's "sources of revenues are usually limited to common assessments." JEB, *The Six-Month "Limited Priority Lien,"* at 4. This makes an HOA's ability to foreclose on the unpaid dues portion of its lien essential for common-interest communities. *Id.* at 1-2. Otherwise, when a homeowner walks away from the property and the first deed of trust holder delays foreclosure, the HOA has to "either increase the assessment burden on the remaining unit/parcel owners or reduce the services the association provides (e.g., by deferring maintenance on common amenities)." *Id.* at 5-6. To avoid having the community subsidize first security holders who delay foreclosure, whether strategically or for some other reason, UCIOA § 3-116 creates a true superpriority lien:

> A foreclosure sale of the association's lien (whether judicial or nonjudicial) is governed by the principles generally applicable to lien foreclosure sales, i.e., a foreclosure sale of a lien entitled to priority extinguishes that lien and any subordinate liens, transferring those liens to the sale proceeds. Nothing in the Uniform Laws establishes (or was intended to establish) a contrary result.

*Id.* at 9 (footnotes omitted); *accord* Memorandum from the JEB to the Comm'rs for the Unif. Law Comm'n 3 (June 11, 2014) (noting that, "[a]s originally drafted, § 3-116(c) was intended to create a true lien priority, and thus the association's foreclosure properly should be viewed as extinguishing the lien of the otherwise first mortgagee (to the same extent

that foreclosure of a real estate tax lien would extinguish that same mortgage)," citing *7912 Limbwood Court Trust*, 979 F. Supp. 2d at 1149).

U.S. Bank's final objection is that it makes little sense and is unfair to allow a relatively nominal lien—nine months of HOA dues—to extinguish a first deed of trust securing hundreds of thousands of dollars of debt. But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security; it also could have established an escrow for SHHOA assessments to avoid having to use its own funds to pay delinquent dues. 1982 UCIOA § 3-116 cmt. 1; 1994 & 2008 UCIOA § 3-116 cmt. 2. The inequity U.S. Bank decries is thus of its own making and not a reason to give NRS 116.3116(2) a singular reading at odds with its text and the interpretation given it by the authors and editors of the UCIOA. *See* NRS 116.1109 (obligating this court to interpret its version of the UCIOA so as to "make uniform the law . . . among states enacting it").

C.

Since NRS 116.3116(2) establishes a true superpriority lien, the next question we must decide is whether the lien may be foreclosed nonjudicially or requires judicial foreclosure. NRS Chapter 116 answers this question directly: An HOA may foreclose its lien by nonjudicial foreclosure sale. Thus, NRS 116.3116(1) defines what an HOA lien covers, while NRS 116.31162(1) states that "in a planned community"—a "planned community" is any type of "common-interest community that is not a condominium or a cooperative," NRS 116.075—"the association may foreclose its lien by sale." To "foreclose [a] lien by sale" under NRS 116.31162(1) encompasses an HOA's conducting a nonjudicial foreclosure sale. This is evident from the remainder of NRS 116.31162, which speaks to the statutory notices of delinquency, default and election to sell required of a nonjudicial foreclosure sale, and the sections that follow,

SUPREME COURT
OF
NEVADA

(O) 1947A

13

NRS 116.31163 through NRS 116.31168, all of which concern the mechanics and requirements of nonjudicial foreclosure sales of HOA liens. The only limits Chapter 116 places on HOA lien foreclosure sales appear in NRS 116.31162(5) and (6), which restrict foreclosure of HOA liens for certain fines and penalties and liens on homes in Nevada's foreclosure mediation program (FMP). *See also State v. Javier C.*, 128 Nev. ___, ___, 289 P.3d 1194, 1197 (2012) ("Nevada follows the maxim 'expressio unius est exclusio alterius,' the expression of one thing is the exclusion of another."). Given this statutory text, we cannot agree with our dissenting colleagues that NRS Chapter 116 requires judicial foreclosure of the superpriority piece of an HOA lien but authorizes nonjudicial foreclosure of everything else.

Together, NRS 116.3116(1) and NRS 116.31162 provide for the nonjudicial foreclosure of the whole of an HOA's lien, not just the subpriority piece of it. U.S. Bank and our dissenting colleagues do not come to terms with NRS 116.31162. Instead, they focus on a single phrase in NRS 116.3116(2) which defines the superpriority piece of the lien as comprising "assessments for common expenses . . . which would have become due in the absence of acceleration during the 9 months immediately preceding *institution of an action to enforce the lien.*" (Emphasis added.) Not acknowledging that NRS 116.3116(2) only discusses lien priority, not foreclosure methods, they maintain that the phrase "institution of an action to enforce the lien" suggests a civil action, a lawsuit brought in a court of law. But the phrase is not so narrow that it excludes nonjudicial foreclosure proceedings. *Black's Law Dictionary* 869 (9th ed. 2009) defines "institution" as "[t]he commencement of something, *such as* a civil or criminal action." (Emphasis added.) As *Black's*

recognizes, "foreclosure" proceedings are "instituted" and include both "judicial foreclosure" and "nonjudicial foreclosure" methods. *Id.* at 719 (defining "foreclosure," "judicial foreclosure," and "nonjudicial" or "power-of-sale foreclosure"). And in the context of foreclosures, "action" appears to be commonly used in connection with nonjudicial as well as judicial foreclosures. *See In re Bonner Mall P'ship*, 2 F.3d 899, 902 (9th Cir. 1993) (referring to a bank "commenc[ing] a nonjudical foreclosure action"); *Santiago v. BAC Home Loans Servicing, L.P.*, ___ F. Supp. 2d ___, ___, 2014 WL 2075994, at *3 (W.D. Tex. 2014) (holding an assignee to be "an appropriate party to initiate a nonjudicial foreclosure action against the Property"); *In re Beach*, 447 B.R. 313, 316 (D. Idaho 2011) ("[T]he Bank initiated a nonjudicial foreclosure action . . . ."); *Bowmer v. Dettelbach*, 672 N.E.2d 1081, 1086 (Ohio Ct. App. 1996) (discussing a "nonjudicial foreclosure action . . . instituted" in California); *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1189 (Wash. 2013) (addressing the powers of the trustee in "a nonjudicial foreclosure action").

The argument that NRS 116.3116(2)'s use of the word "action" means "that an HOA must foreclose judicially to invoke the superpriority" lien provision was considered and rejected in *Nationstar Mortgage, LLC v. Rob and Robbie, LLC*, No. 2:13-cv-01241-RCJ-PAL, 2014 WL 3661398, at *4 (D. Nev. July 23, 2014). The court gave "two independent reasons" for its holding. "First, 'action' does not include only civil actions. The Legislature could easily have said 'civil action' or 'judicial action,' but it used the broader term 'action.'" *Id.* In the lien foreclosure context, "where the statutes . . . provide for either judicial or non judicial foreclosure,

'action' is most reasonably read to include either." *Id.*[5] Second, NRS 116.3116(2) does not "use the word 'action' in a way that makes the super-priority status depend[e]nt upon whether an 'action' has been instituted. Rather, the word 'action' is used (in the subjunctive mode, not the indicative mode) as a way to measure the portion of an HOA lien that has super-priority status." *Id.*

UCIOA § 3-116(b) uses the phrase "institution of an action to enforce the lien" in describing the superpriority lien, exactly as NRS 116.3116(2) does. Section 3-116(j) of the 1982 and 1994 UCIOA (and with minor alteration, section 3-116(k) of the 2008 UCIOA) prompt the adopting state to choose and insert its authorized foreclosure method, be it judicial or nonjudicial:

> (j) The association's lien may be foreclosed as provided in this subsection:
>
> > (1) In a condominium or planned community, the association's lien must be foreclosed in like manner as a mortgage on real estate [or by power of sale under [insert appropriate state statute]];
> >
> > (2) In a cooperative whose unit owners' interests in the units are real estate (Section 1-105), the association's lien must be

---

[5]We recognize that NRS 116.3116 uses "action" to signify civil action in NRS 116.3116(8) (a "judgment or decree in any action brought under this section must include costs and reasonable attorney's fees") and NRS 116.3116(11) (authorizing appointment of a receiver "[i]n an action by an association to collect assessments or to foreclose a lien"). But we accept that "action" includes civil court actions. The point is that "institution of an action to enforce the lien" is not restricted to judicial actions but, rather, includes nonjudicial foreclosure actions as well.

foreclosed in like manner as a mortgage on real estate [or by power of sale under [insert appropriate state statute]] [or by power of sale under subsection (k)]; or

(3) In a cooperative whose unit owners' interests in the units are personal property (Section 1-105), the association's lien must be foreclosed in like manner as a security interest under [insert reference to Article 9, Uniform Commercial Code.]

[(4) In the case of foreclosure under [insert reference to state power of sale statute], the association shall give reasonable notice of its action to all lien holders of the unit whose interest would be affected.]

1982 UCIOA § 3-116(j). If the UCIOA meant "institution of an action to enforce the lien" in § 3-116(b) to signify that all superpriority HOA lien foreclosures must proceed judicially, § 3-116(j)'s repeated references to the foreclosure of "the association's lien" by judicial or nonjudicial foreclosure, depending on the enacting state's local laws, is inexplicable. And, indeed, the Joint Editorial Board for Uniform Real Property Acts has confirmed that, in the context of an HOA's superpriority lien specifically, "[a] foreclosure sale of the association's lien (*whether judicial or nonjudicial*) is governed by the principles generally applicable to lien foreclosure sales, i.e., a foreclosure sale of a lien entitled to priority extinguishes that lien and any subordinate liens." JEB, *The Six-Month "Limited Priority Lien,"* at 9 (emphasis added) (footnote omitted).

Nevada did not enact subsection (j) of § 3-116. Instead, it enacted a series of separate, consecutively numbered statutes, NRS 116.31162 through NRS 116.31168, each addressing a specific aspect of the nonjudicial foreclosure process NRS 116.31162 authorizes for HOA liens. These statutes use "enforce" throughout with reference to an HOA's

nonjudicial foreclosure of its lien. *See* NRS 116.31162(1)(b)(2) (the notice of delinquent assessment must identify "the person authorized by the association to enforce the lien by sale"); NRS 116.31162(1)(c); NRS 116.31164(2) (discussing costs, fees, and expenses incident to an HOA's nonjudicial "enforcement of its lien"). Nothing in these statutes suggests that, by adopting them in lieu of the more abbreviated § 3-116(j), Nevada was *sub silentio* rejecting the UCIOA's use of "institution of an action to enforce the lien" as applying to either judicial or nonjudicial foreclosures— much less distinguishing, though without saying so, between the subpriority piece of an HOA's lien, to which the nonjudicial foreclosure procedures detailed in NRS 116.31162 through NRS 116.31168 would apply, and the superpriority piece of an HOA's lien, which would require a judicial foreclosure proceeding not actually mentioned in Chapter 116. If anything, Nevada's elaborate nonjudicial foreclosure provisions signal the Legislature's embrace of nonjudicial foreclosure of HOA liens, not the opposite.

Recall that, unlike § 3-116(b), which currently limits the superpriority piece of an HOA's lien to six months of unpaid dues, Nevada's superpriority lien covers nine months of dues as well as maintenance and nuisance-abatement charges "incurred . . . pursuant to NRS 116.310312." NRS 116.3116(2); *see supra* note 1. Addressing maintenance and nuisance-abatement charges, NRS 116.310312(4) expressly cross-references Chapter 116's nonjudicial foreclosure provisions, stating that "[t]he lien may be foreclosed under NRS 116.31162 to 116.31168, inclusive." The maintenance and nuisance-abatement statute borrows the phrase "institution of an action to enforce the lien" from NRS 116.3116 in explaining that even if federal law requires a

shorter period of priority, "the period of priority of the lien must not be less than the 6 months immediately preceding the institution of an action to enforce the lien." NRS 116.310312(6). This phrasing is underinclusive and beyond confusing unless read to encompass judicial and nonjudicial foreclosures alike, both in NRS 116.310312(6) and in its statute of origin, NRS 116.3116(2).

The Nevada Real Estate Division of the Department of Business and Industry (NRED) is charged with administering Chapter 116. NRS 116.615; *see State, Dep't of Bus. & Indus. v. Nev. Ass'n Servs., Inc.*, 128 Nev. ___, ___, 294 P.3d 1223, 1227-28 (2012). NRS 116.623(1)(a) tasks NRED with issuing "advisory opinions as to the applicability or interpretation of . . . [a]ny provision of this chapter." On December 12, 2012, NRED issued Advisory Opinion No. 13-01. The opinion addresses, among other questions, whether NRS 116.3116(2) requires a civil action by an HOA to foreclose the superpriority piece of its lien. NRED opines that it does not: "The association is not required to institute a civil action in court to trigger the 9 month look back provided in NRS 116.3116(2)." 13-01 Op. Dep't of Bus. & Indus., Real Estate Div. 18 (2012). Elaborating, the NRED opinion states, "NRS 116 does not require an association to take any particular action to enforce its lien, but [only] that it institutes 'an action,'" which includes the HOA taking action under NRS 116.31162 to initiate the nonjudicial foreclosure process. *Id.* at 17-18. NRED's interpretation is persuasive, as it comports with both the statutory text and the JEB's interpretation of the UCIOA. *See Int'l Game Tech., Inc. v. Second Judicial Dist. Court,* 122 Nev. 132, 157, 127 P.3d 1088, 1106 (2006).

SUPREME COURT
OF
NEVADA

(O) 1947A

19

U.S. Bank and the dissent argue that judicial foreclosure should be required as a matter of policy because of the safeguards it offers—notice and an opportunity to be heard, court supervision of the sale, judicial review of the amount of the lien comprising the superpriority piece, and a one-year redemption period. *See* NRS 40.430-.463; NRS 21.190-.210. But this argument assumes that requiring the superpriority piece of an HOA lien to be judicially foreclosed will actually afford such protections without need of further amendment to Chapter 116, and this is far from clear. To allow nonjudicial foreclosure of the subpriority piece, which is where the dissent would draw the judicial v. nonjudicial foreclosure line, produces the same difficulties for the homeowners and junior lienholders that are cited as policy reasons for requiring judicial foreclosure of the superpriority piece of the lien; the only difference is the benefit that would inure to first security holders under the dissent's interpretation of Chapter 116. Surely, if the Legislature intended such an unusual distinction, it would have said so explicitly, but it did not.

We recognize that "there has been considerable publicity across the country regarding alleged abuse in the foreclosure process when unit owners fail to pay sums due" their HOA, prompting amendments to the UCIOA that "propose[ ] new and considerable restrictions on the foreclosure process as it applies to common interest communities." *Prefatory Note to the 2008 Amendments to the UCIOA*, 7 U.L.A., part IB, at 225 (2009). But the choice of foreclosure method for HOA liens is the Legislature's, and the Nevada Legislature has written NRS Chapter 116 to allow nonjudicial foreclosure of HOA liens, subject to the special notice requirements and protections handcrafted by the Legislature in NRS 116.31162 through NRS 116.31168. Countervailing policy arguments

exist in favor of allowing nonjudicial foreclosure, including that judicial foreclosure takes longer to accomplish, thereby delaying the common-interest community's receipt of needed HOA funds. The consequences of such delays can be "devastating to the community and the remaining residents," who must either make up the dues deficiencies, arguably unjustly enriching the delaying lender, or abandon amenities and maintenance, thereby impairing the value of their homes. JEB, *The Six-Month "Limited Priority Lien,"* at 4-5. If revisions to the foreclosure methods provided for in NRS Chapter 116 are appropriate, they are for the Legislature to craft, not this court.

### D.

U.S. Bank makes two additional arguments that merit brief discussion. First, the lender contends that the nonjudicial foreclosure in this case violated its due process rights. Second, it invokes the mortgage savings clause in the Southern Highlands CC&Rs, arguing that this clause subordinates SHHOA's lien to the first deed of trust. Neither argument holds up to analysis.

### 1.

SFR is appealing the dismissal of its complaint for failure to state a claim upon which relief can be granted. NRCP 12(b)(5). The complaint alleges that "the HOA foreclosure sale complied with all requirements of law, including but not limited to, recording and mailing of copies of Notice of Delinquent Assessment and Notice of Default, and the recording, posting and publication of the Notice of Sale." It further alleges that, "prior to the HOA foreclosure sale, no individual or entity paid the super-priority portion of the HOA Lien representing 9 months of assessments for common expenses." In view of the fact that the "requirements of law" include compliance with NRS 116.31162 through

SUPREME COURT
OF
NEVADA

(O) 1947A

21

NRS 116.31168 and, by incorporation, NRS 107.090, *see* NRS 116.31168(1), we conclude that U.S. Bank's due process challenge to the lack of adequate notice fails, at least at this early stage in the proceeding.[6]

The contours of U.S. Bank's due process argument are protean. To the extent U.S. Bank argues that a statutory scheme that gives an HOA a superpriority lien that can be foreclosed nonjudicially, thereby extinguishing an earlier filed deed of trust, offends due process, the argument is a nonstarter. As discussed in *7912 Limbwood Court Trust*, 979 F. Supp. 2d at 1152:

> Chapter 116 was enacted in 1991, and thus [the lender] was on notice that by operation of the statute, the [earlier recorded] CC&Rs might entitle the HOA to a super priority lien at some future date which would take priority over a [later recorded] first deed of trust.... Consequently, the conclusion that foreclosure on an HOA super priority lien extinguishes all junior liens, including a first deed of trust recorded prior to a notice of delinquent assessments, does not violate [the lender's] due process rights.

*Accord Nationstar Mtg.*, 2014 WL 3661398, at *3 (rejecting a due process challenge to nonjudicial foreclosure of a superpriority lien).

U.S. Bank further complains about the content of the notice it received. It argues that due process requires specific notice indicating the

___

[6]On a motion to dismiss, a court must take all factual allegations in the complaint as true and not delve into matters asserted defensively that are not apparent from the face of the complaint. *See Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). Consistent with this standard, we note but do not resolve U.S. Bank's suggestion that we could affirm by deeming SFR's purchase "void as commercially unreasonable."

amount of the superpriority piece of the lien and explaining how the beneficiary of the first deed of trust can prevent the superpriority foreclosure sale. But it appears from the record that specific lien amounts were stated in the notices, ranging from $1,149.24 when the notice of delinquency was recorded to $4,542.06 when the notice of sale was sent. The notices went to the homeowner and other junior lienholders, not just U.S. Bank, so it was appropriate to state the total amount of the lien. As U.S. Bank argues elsewhere, dues will typically comprise most, perhaps even all, of the HOA lien. *See supra* note 3. And from what little the record contains, nothing appears to have stopped U.S. Bank from determining the precise superpriority amount in advance of the sale or paying the entire amount and requesting a refund of the balance. *Cf. In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995) ("[I]t is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right."). On this record, at the pleadings stage, we credit the allegations of the complaint that SFR provided all statutorily required notices as true and sufficient to withstand a motion to dismiss. *See 7912 Limbwood Court Trust,* 979 F. Supp. 2d at 1152-53.

2.

U.S. Bank last argues that, even if NRS 116.3116(2) allows nonjudicial foreclosure of a superpriority lien, the mortgage savings clause in the Southern Highlands CC&Rs subordinated SSHOA's superpriority lien to the first deed of trust. The mortgage savings clause states that "no lien created under this Article 9 [governing nonpayment of assessments], nor the enforcement of any provision of this Declaration shall defeat or render invalid the rights of the beneficiary under any Recorded first deed

of trust encumbering a Unit, made in good faith and for value." It also states that "[t]he lien of the assessments, including interest and costs, shall be subordinate to the lien of any first Mortgage upon the Unit."

NRS 116.1104 defeats this argument. It states that Chapter 116's "provisions may not be varied by agreement, and rights conferred by it may not be waived . . . [e]xcept as *expressly* provided in" Chapter 116. (Emphasis added.) "Nothing in [NRS] 116.3116 expressly provides for a waiver of the HOA's right to a priority position for the HOA's super priority lien." *See 7912 Limbwood Court Trust*, 979 F. Supp. 2d at 1153. The mortgage savings clause thus does not affect NRS 116.3116(2)'s application in this case.[7] *See Boulder Oaks Cmty. Ass'n v. B & J Andrews Enters., LLC*, 125 Nev. 397, 407, 215 P.3d 27, 34 (2009) (holding that a CC&Rs clause that created a statutorily prohibited voting class was void and unenforceable).

## III.

NRS 116.3116(2) gives an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust. Because Chapter 116 permits nonjudicial foreclosure of HOA liens, and because

---

[7] *Coral Lakes Community Ass'n v. Busey Bank, N.A.*, 30 So. 3d 579 (Fla. Dist. Ct. App. 2010), on which U.S. Bank relies, does not suggest a different result. The CC&Rs that contained the subordination clause in *Coral Lakes* were in place before the statute that limited the ability to subrogate association liens took effect. *Id.* at 581-84 & 582 n.3. The court refused to enforce the statute because disturbing the prior, contractual relationship "would implicate constitutional concerns about impairment of vested contractual rights." *Id.* at 584. Here, however, the Southern Highlands CC&Rs were recorded after the Legislature adopted and enacted Chapter 116, so no similar concerns about impairment of any party's vested contractual rights arise.

SUPREME COURT
OF
NEVADA

(O) 1947A

SFR's complaint alleges that proper notices were sent and received, we reverse the district court's order of dismissal. In view of this holding, we vacate the order denying preliminary injunctive relief and remand for further proceedings consistent with this opinion.

_____ *Pickering* _____, J.
Pickering

We concur:

_____ _____, J.
Hardesty

_____ _____, J.
Douglas

_____ _____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A

GIBBONS, C.J., with whom PARRAGUIRRE and CHERRY, JJ., agree, concurring in part and dissenting in part:

While I concur with the majority that NRS 116.3116(2) establishes a true superpriority for an HOA's lien, the enforcement of the superpriority portion of the lien requires institution of an action. I would conclude that this statutory language mandates that a civil judicial foreclosure complaint be filed in order to extinguish a first deed of trust.

*The Legislature's use of the term "action" indicates that a superpriority lienholder must file a judicial foreclosure complaint*

The phrase "institution of an action" may not inherently mean the filing of a judicial action. *See Black's Law Dictionary* 800 (6th ed. 1990) (defining "institution" as "[t]he commencement or inauguration of anything, as the commencement of an action"); *id.* at 28 (defining "action" as "[c]onduct; behavior; something done; the condition of acting; an act or series of acts"). But when used in "its usual legal sense," "action" means "a lawsuit brought in a court." *Id.; see also BP Am. Prod. Co. v. Burton,* 549 U.S. 84, 91 (2006) ("The key terms in this provision—'action' and 'complaint'—are ordinarily used in connection with judicial, not administrative, proceedings.").

In my view, NRS 116.3116 is using "action" in its usual legal sense. Other subsections in NRS 116.3116 reference concepts specific to judicial proceedings in relation to the word "action." NRS 116.3116(8) states that a "judgment or decree in any action brought under this section must include costs and reasonable attorney's fees for the prevailing party." NRS 116.3116(11) states:

> In an action by an association to collect assessments or to foreclose a lien created under this section, the court may appoint a receiver to collect all rents or other income from the unit

> alleged to be due and owing to a unit's owner before commencement or during pendency of the action . . . . The court may order the receiver to pay any sums held by the receiver to the association during pendency of the action to the extent of the association's common expense assessments . . . .

The way NRS 116.3116 uses action to indicate a court action demonstrates that "institution of an action" means the filing of a judicial proceeding. *See Savage v. Pierson*, 123 Nev. 86, 94 & n.32, 157 P.3d 697, 702 & n.32 (2007) ("[I]f a word is used in different parts of a statute, it will be given the same meaning unless it appears from the whole statute that the Legislature intended to use the word differently.").

To be sure, Chapter 116 does not consistently use "action" to mean a judicial action. *See, e.g.,* NRS 116.2119 (the association's declaration may require that the lenders who hold security interests in the units "approve specified actions of the units' owners or the association as a condition to the effectiveness of those actions" but it may not require approval for certain specified nonjudicial "actions"); NRS 116.785(1) (giving the Commission for Common-Interest Communities and Condominium Hotels, if it finds a violation of NRS Chapter 116, the authority to "take any or all of the following actions," and providing various nonjudicial actions). But when Chapter 116 uses a phrase akin to "institution of an action," it signals the filing of an action in court. *See, e.g.,* NRS 116.2124 (any person holding an interest in a common interest community "may *commence an action* in the district court" to terminate the community in the event of a catastrophe (emphasis added)); NRS 116.31088 (discussing rules for when the association is considering "*the commencement of a civil action*" (emphasis added)); NRS 116.320(3) ("In *any action commenced to enforce* the provisions of this section, the

prevailing party is entitled to recover reasonable attorney's fees and costs." (emphasis added)); NRS 116.795(1) (the regulatory agency "may *bring an action* in . . . any court of competent jurisdiction" to enjoin further continuing violations of Chapter 116 (emphasis added)). The specific phraseology used in NRS 116.3116(2), "institution of an action," demonstrates that a judicial action, rather than just any enforcement action, was what the Legislature contemplated as the method for extinguishing a first deed of trust. *See also Benson v. Zoning Bd. of Appeals of Town of Westport*, 873 A.2d 1017, 1021-24 (Conn. App. Ct. 2005) (concluding that although the phrase "institution of an action" as used in the statute at issue was ambiguous, the phrase had "never been held to mean anything other than the filing of a civil action in court" and that the legislature had not made it clear that other proceedings would suffice).

I recognize that Chapter 116 gives the association the option to enforce its lien through nonjudicial foreclosure by following the procedures provided in NRS 116.31162 to 116.31168. The association may even nonjudicially foreclose on its lien for maintenance and abatement charges, charges that may be included in the superpriority portion of the association's lien. *See* NRS 116.310312(4). But, as explained, the lien's superpriority is tied to the "institution of an action to enforce the lien." NRS 116.3116(2); NRS 116.310312(6). Thus, I would conclude that while the association has the option to nonjudicially foreclose on its lien, it must foreclose through judicial action in order to trigger the extinguishing effect of the superpriority portion of its lien.

*The NRED advisory opinion should not be given deference because it conflicts with NRS 116.3116(2)'s statutory language*

This conclusion is in disagreement with the agency charged with regulating and administering Chapter 116, the Nevada Department of Business and Industry's Real Estate Division (NRED). *See* NRS 116.615; NRS 116.623; *State, Dep't of Bus. & Indus. v. Nev. Ass'n Servs., Inc.*, 128 Nev. ___, ___, 294 P.3d 1223, 1227 (2012). NRED has interpreted "action to enforce the lien" as being met by an association taking action to nonjudicially foreclose on its lien pursuant to NRS 116.31162; thus, according to NRED, an association need not file a civil judicial action to trigger the superpriority portion of the association's lien under NRS 116.3116(2). *See* 13-01 Op. Dep't of Bus. & Indus., Real Estate Div. 17-18 (2012).

However, only agency interpretations that are within the statutory language are afforded deference, *Taylor v. State, Dep't of Health & Human Servs.*, 129 Nev. ___, ___, 314 P.3d 949, 951 (2013), and NRED's interpretation is not within NRS 116.3116's language. Although NRS Chapter 116's statutory scheme allows an association to nonjudicially foreclose on its lien, it must judicially foreclose to trigger the superpriority effect of its lien. *See* NRS 116.3116(2).

*The Nevada Legislature intentionally departed from the model code to require institution of a judicial action in NRS 116.3116*

I also recognize that NRS 116.3116(2)'s proclamation that the association must file a judicial action to trigger the superpriority effect of its lien is at odds with the uniform act upon which the statute was based. The Joint Editorial Board for Uniform Real Property Acts, which counsels the Uniform Law Commission on uniform real estate laws, has stated that an association may foreclose on superpriority portions of its lien and

SUPREME COURT
OF
NEVADA

(O) 1947A

4

extinguish the first security "in the manner in which a mortgage is foreclosed"; so, "an association may foreclose its lien by nonjudicial proceedings if the state permits nonjudicial foreclosure." Joint Editorial Board for Uniform Real Property Acts, *The Six-Month "Limited Priority Lien" for Association Fees Under the Uniform Common Interest Ownership Act*, at 9 n.8 (2013).

This interpretation is consistent with the UCIOA section upon which NRS 116.3116 is based. The uniform act allows for an adopting state to insert its authorized foreclosure method, whether it be judicial foreclosure or by power of sale. But once the adopting state chooses a method, it becomes mandatory:

> (1) In a condominium or planned community, the association's lien *must be foreclosed* in like manner as a mortgage on real estate [or by power of sale under [insert appropriate state statute]];
>
> (2) In a cooperative whose unit owners' interests in the units are real estate (Section 1-105), the association's lien *must be foreclosed* in like manner as a mortgage on real estate [or by power of sale under [insert appropriate state statute]] [or by power of sale under subsection (k)]; or
>
> (3) In a cooperative whose unit owners' interests in the units are personal property (Section 1-105), the association's lien *must be foreclosed* in like manner as a security interest under [insert reference to Article 9, Uniform Commercial Code].

1982 UCIOA § 3-116(j) (emphases added).

NRS 116.3116 departed from the uniform act in that it permits, but does not mandate, nonjudicial foreclosure. *See* NRS 116.3116(7) ("This section does not prohibit actions to recover sums for which subsection 1 creates a lien or prohibit an association from taking a deed in lieu of foreclosure."). And, NRS 116.3116(2), as well as NRS

116.310312(6), tie the "institution of an action" to the triggering of the lien's superpriority effect. NRS 116.3116's variance from the uniform act renders the Joint Editorial Board's report interpreting the uniform act's intentions not informative on the proper reading of "institution of an action" as used in NRS 116.3116(2). *See Sallee v. Stewart*, 827 N.W.2d 128, 142 (Iowa 2013) (citing 2B Norman J. Singer & J.D. Shambie Singer, *Statutes & Statutory Construction* § 52:5, at 370 (rev. 7th ed. 2012), for "noting that ordinarily 'when a legislature models a statute after a uniform act, but does not adopt particular language, courts conclude the omission was "deliberate" or "intentional," and that the legislature rejected a particular policy of the uniform act'").

Furthermore, the report post-dates the Legislature's adoption of the UCIOA. And while preenactment official commentary to uniform acts, including the UCIOA, generally may inform this court's understanding of the Legislature's codification of that uniform act, *see Boulder Oaks Cmty. Ass'n v. B & J Andrews Enters., LLC*, 125 Nev. 397, 405-06, 215 P.3d 27, 32-33 (2009) (considering the UCIOA's official comments when interpreting Nevada's codification of the uniform act), this post-hoc commentary is not persuasive, especially in the face of statutory language that states otherwise. *Cf. Ybarra v. State*, 97 Nev. 247, 249, 628 P.2d 297, 297-98 (1981) (noting that generally, "a statute adopted from another jurisdiction will be presumed to have been adopted with the construction placed upon it by the courts of that jurisdiction *before* its adoption" (emphasis added)); 2B Norman J. Singer & J.D. Shambie Singer, *Statutes & Statutory Construction* § 52:2 (rev. 7th ed. 2012) ("When the state of origin interprets a statute after the adopting

Supreme Court
OF
Nevada

(O) 1947A

6

state statute has been enacted, courts do not presume the adopting state also adopted the subsequent construction.").

*Policy considerations*

In my view, the Legislature's decision to require associations to judicially foreclose their lien to extinguish the first security interest alleviates potential problems that could arise under the majority's holding that nonjudicial foreclosures are enough. As the majority points out, by incorporating certain notice provisions from Chapter 107, Chapter 116 appears to mandate that the association mail the notice of default and notice of sale to the first security holders who have recorded their security interest when the association is foreclosing on its lien. NRS 116.31168(1); NRS 107.090. But what the majority fails to adequately address is that the association is not required to indicate in its notices that superpriority portion of its lien being foreclosed on, let alone what the amount of the superpriority portion is: the association's notice of delinquent assessment and notice of default and election to sell need only state "the assessments and other sums which are due in accordance with subsection 1 of NRS 116.3116." NRS 116.31162(1)(a); NRS 116.31162(1)(b); *see also* NRS 116.311635(3)(a) (notice of sale must provide "the amount necessary to satisfy the lien"). Although the first security holder could prevent the extinguishment of its interest by purchasing the property at the association's foreclosure sale, *see Carrillo v. Valley Bank of Nev.*, 103 Nev. 157, 158, 734 P.2d 724, 725 (1987), *Keever v. Nicholas Beers Co.*, 96 Nev. 509, 515, 611 P.2d 1079, 1083 (1980), in the nonjudicial foreclosure setting, first security interest holders have no means by which to determine whether an association is even foreclosing on superpriority portions of its lien such as to prompt it to purchase the property at the association's sale. Thus, in my view, the majority fails to give adequate

SUPREME COURT
OF
NEVADA

(O) 1947A

consideration to the due process implications of its holding. *Cf. Kotecki v. Ausgusztiny*, 87 Nev. 393, 395, 487 P.2d 925, 926 (1971) ("'(W)hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'" (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950))).

Relatedly, after the first deed of trust loses its security in the property pursuant to the association's foreclosure of its superpriority lien, the former homeowner generally will be liable for the amount still owed on the debt. NRS 40.455. Under the majority's holding, in the nonjudicial foreclosure setting, the owner will be left with no mechanism by which to obtain the property's value as an offset against the amount still owed. For example, even if the foreclosure-sale purchaser took the property for an amount significantly lower than its fair market value, the owner would not have an unjust enrichment action against that purchaser; a sale under the nonjudicial foreclosure scheme for an association's lien "vests in the purchaser the title of the unit's owner without equity or right of redemption." NRS 116.31166(3). This also means that the owner, as well as the first security, will have no right to redeem the property under the majority's holding. NRS 116.31166(3); *see also Bldg. Energetix Corp. v. EHE, LP*, 129 Nev. ___, ___, 294 P.3d 1228, 1233 (2013) (recognizing that there is no right to redeem after a Chapter 107 nonjudicial foreclosure sale because a sale under that chapter "'vests in the purchaser the title of the grantor and any successors in interest without equity or right of redemption'" (quoting NRS 107.080(5))).

But if the association follows the Legislature's directive and forecloses through court action, *see* NRS 116.3116(2), then the rules governing civil proceedings, *see generally* NRS Title 2, Chapters 10-22, and specifically the rules governing actions affecting real property, as well as the Nevada Rules of Civil Procedure, would govern.[1] A specific protection that comes with judicial foreclosure is the one-year right of redemption that is available to both the property owner and the otherwise-extinguished junior lienholders, which includes the first security interest in this context. NRS 21.190; 21.200; 21.210; *see also Bldg. Energetix Corp.*, 129 Nev. at ___, 294 P.3d at 1233. If the owner or junior lienholders pay what the purchaser at the judicial foreclosure sale paid to acquire the property, plus any other statutorily required amounts, they can redeem the property, NRS 21.200; 21.210; 21.220, allowing the property's value to be applied to the first security interest's outstanding loan amount. The full adjudication of the rights between the pertinent parties and as to the property, including the association, the owner, and the first security interest, as well as any other pertinent party, combined

---

[1]NRS 40.430's "one action" rule for recovery of debt or enforcement of rights secured by a mortgage or other lien upon real property would not govern the association's judicial foreclosure action, as liens that arise pursuant to an assessment under Chapter 116 are not considered a "mortgage or other lien." NRS 40.433.

with the statutory protections afforded with a judicial foreclosure, further demonstrate that judicial foreclosure on an association's lien is necessary to trigger its superpriority effect under NRS 116.3116(2).

_____, C.J.
Gibbons

We concur:

_____ J.
Parraguirre

_____, J.
Cherry